The PEOPLE of the State of Colorado, ex rel. Dennis E. FAULK, District Attorney In and For the Eleventh Judicial District, Petitioner,

v.

The DISTRICT COURT OF the ELEVENTH JUDICIAL DISTRICT OF COLORADO and the Honorable Paul J. Keohane, One of the Judges Thereof, Respondents.

No. 83SA231.

Supreme Court of Colorado, En Banc.

Aug. 22, 1983.

Dennis E. Faulk, Dist. Atty., Canon City, pro se.

Steven B. Rich, Deputy Dist. Atty., Fairplay, for petitioner.

Paul J. Keohane, District Judge, pro se.

David F. Vela, Colorado State Public Defender, Kenneth M. Plotz, Philip L. Dubois, Deputy State Public Defenders, Salida, Leonard Campbell, Marla K. Thoe, Montrose, for respondents.

QUINN, Justice.

In this original proceeding the People seek an order requiring the respondent court to sequester a jury in a first degree murder trial and another order prohibiting the court from admitting into evidence at trial the deposition testimony of a defense witness. We issued a rule to show cause and now make the rule absolute.

## I.

A brief review of this case is necessary in order to place the issues in proper focus. Mary Williams, the defendant in the pending trial, is charged with first degree murder after deliberation,[1] committed against her late husband, Clint Williams, on January 27, 1981, in Chaffee County, Colorado. The indictment was originally returned in the District Court of Chaffee County, but venue was later changed to Fremont County, where the matter is now awaiting trial. Before the change of venue, the District Court of Chaffee County granted the defendant's motion to take the deposition of a witness, John C. Howlett, who was in poor health. Mr. Howlett's deposition was not taken in the presence of the court, but instead was taken in the defense attorney's office at Buena Vista, Colorado, with the district attorney present.

On May 26, 1983, after venue had been changed to the District Court of Fremont County, the case came up for hearing in that court on two matters. The court first considered the defendant's motion to admit into evidence the deposition of Mr. Howlett at the upcoming trial scheduled for June 6, 1983. The respondent court ruled that because the judge was not present at the deposition, the deposition would not be admitted.[2] The defendant then requested permission to retake the deposition of Mr. Howlett in the presence of a judge and presented testimony from Mr. Howlett's physician, Dr. Michael L. Dennington, relating to the witness's physical condition. Dr. Dennington testified that Mr. Howlett's larynx had been surgically removed three years previously due to laryngeal carcinoma. Mr. Howlett used a voice box to communicate and, according to Dr. Dennington, would experience some stress in testifying since he also had emphysema. The doctor, however, could not state that Mr. Howlett was presently suffering from cancer. It was also the doctor's view that Mr. Howlett, although experiencing intermittent good and bad days, might well be able to testify at the upcoming trial, but had planned a vacation to Alaska and would be greatly inconvenienced if he would be required to forego his vacation at this time. At the conclusion of the hearing the court ruled that no showing had been made of the witness's present inability to testify at trial. The court, however, granted the defendant's motion to take Mr. Howlett's deposition in court on the following day.[3]

On May 27, 1983, Mr. Howlett was deposed in the presence of the court. Although Mr. Howlett's wife was sworn in as an interpreter for the purpose of translating any testimony that might not be readily understandable, Mr. Howlett was able to effectively communicate during a rather lengthy deposition and there was practically

---

1. Section 18–3–102(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).

2. We express no opinion on the correctness of the respondent court's ruling in this respect.

3. The district attorney does not dispute the respondent court's ruling permitting the retaking of Mr. Howlett's deposition in the presence of the court. Crim.P. 15(a) authorizes the court to order a prospective witness's deposi-

tion be taken upon motion, supported by an affidavit showing that the witness "may be unable to attend a trial or hearing and that it is necessary to take his deposition to prevent injustice." The standards for the taking of a deposition under Crim.P. 15(a) are much more general and entrust a correspondingly greater degree of discretion to the trial judge than the standards relating to the admissibility of the deposition at trial under Crim.P. 15(e).

no need for the services of an interpreter. Mr. Howlett's testimony related basically to his acquaintance with the victim and to three conversations which he had with the victim approximately three months prior to the homicide. On two separate occasions he spoke to the victim on a road outside Buena Vista. The victim, who appeared frightened on both occasions, told Mr. Howlett that he had received threatening phone calls at his home from some man whose voice he was unable to recognize. A few days after his second conversation with the victim, Mr. Howlett again encountered him on the road in a highly emotional state. The victim on this occasion told Mr. Howlett that as he was driving to work some man in a truck had tried to run him off the road.[4] At the conclusion of the deposition the court ruled that it would be admitted at trial because, in the court's view, there was a significant probability that Mr. Howlett would be unable to testify at trial due to his various ailments.

After ruling on the deposition, the court addressed the motion for a sequestered jury. The district attorney, although not intending to qualify the jury for the death penalty, concurred in the defendant's request for sequestration and advised the

court that Colorado case law mandated a sequestered jury in a first degree murder trial. The respondent court, however, being of the opinion that sequestration was unnecessary unless the jury was death-qualified, ruled that the jury would not be sequestered. The district attorney thereafter commenced an original proceeding in this court.

## II.

We first consider the respondent court's refusal to sequester the jury. Crim.P. 24(f) provides that the sequestration of the jury in noncapital cases shall only be upon express order of court for good cause shown, but in capital cases "jurors shall remain in the bailiff's custody during all recesses from the time the jury is selected until discharged by the court." The issue before us, therefore, is whether the trial of a first degree murder charge is a capital case for purposes of Crim.P. 24(f), even though the district attorney does not intend to qualify the jury for consideration of the death penalty or to seek the imposition of the death penalty in the event of a conviction.[5]

4. The district attorney objected to Mr. Howlett's deposition testimony on grounds of hearsay and relevancy. The court overruled the objections, although the record is unclear as to whether the court's ruling on the hearsay objection was based upon the excited utterance exception, C.R.E. 803(2), or the state of mind exception, C.R.E. 803(3). As to the relevancy objection, the court at one point stated that the victim's statements were admissible "to show [the victim's] state of mind, which ties into ... one of the defenses." The court, however, did not explain the manner in which the victim's state of mind was at that point a material issue in the case. *See generally People v. Madson,* 638 P.2d 18 (Colo.1981). Although the district attorney requests that we review the correctness of these evidentiary rulings, we decline to do so. If and when the deposition of Mr. Howlett is offered into evidence at any future trial, the court at that time may request further argument on these questions and resolve them in the context of a more adequate evidentiary record than that present here. If Mr. Howlett is called as a witness at trial, the court similarly will be able to rule on the objections against the backdrop of the trial evidence rather than

in the isolated context of the partial record before us.

5. Section 16–11–103(1), C.R.S.1973 (1978 Repl. Vol. 8), states that the trial court, upon the defendant's conviction of a class 1 felony, shall conduct a separate sentencing hearing to determine whether the defendant should be sentenced to death or life imprisonment on the basis of the jury's findings as to aggravating and mitigating factors. It may be questioned whether the district attorney's decision not to qualify the jury for the death penalty is sufficient by itself to dispense with the penalty hearing authorized by section 16–11–103(1). Although we do not decide the issue here, it would appear that if the penalty hearing on life imprisonment or death is to be dispensed with and life imprisonment imposed as the penalty upon conviction of first degree murder, then prior to the commencement of trial proceedings the district attorney and the defendant should execute a stipulation, approved by the court, that none of the aggravating factors essential to a death sentence exist or that one or more of the mitigating factors exist, thereby rendering life imprisonment the appropriate penalty. *See*

In *Tribe v. District Court,* 197 Colo. 433, 593 P.2d 1369 (1979), we considered the meaning of a "capital case" for purposes of jury sequestration under Crim.P. 24(f). In that case Tribe was charged with first degree murder and moved to sequester the jury. The trial court denied the request because the death penalty could not at that time have been constitutionally imposed in the event of a conviction. Tribe then sought prohibitory relief in this court. Drawing on the analogous authority of *People ex rel. Dunbar v. District Court,* 179 Colo. 304, 500 P.2d 358 (1972) (per curiam), which held that a first degree murder charge is a capital offense for purposes of bail even though, under the state of the law existing at that time, the death penalty could not be constitutionally imposed, and *People v. Haines,* 37 Colo.App. 302, 549 P.2d 786 (1976), which similarly held that a first degree murder case, regardless of the constitutional status of capital punishment, was a capital case for purposes of the number of peremptory challenges available to an accused, this court in a unanimous opinion held that "Crim.P. 24(f) continues to require sequestration of jurors in a first-degree murder case unless the requirement is waived by the accused." 197 Colo. at 435, 593 P.2d at 1371. Our decision in *Tribe* is controlling on the issue raised here. A capital case for purposes of jury sequestration under Crim.P. 24(f) includes those offenses which by reason of their gravity have been classified as class 1 felonies and by statute carry the most serious penalty authorized by law, life imprisonment or death. Murder in the first degree is such an offense.[6] Sections 18–3–102(3), C.R.S.1973 (1978 Repl.

Vol. 8) and 18–1–105(1), C.R.S.1973 (1982 Supp.).

■ Notwithstanding the clear holding of *Tribe,* the respondent court argues that any error in not sequestering the jury would be harmless unless the defendant could demonstrate prejudice from the non-sequestration. The short answer to this argument is that it is not the function of a trial court in passing upon the sequestration motion to indulge in a speculative forecast about the harmless character of any error in denying what is in all respects a meritorious motion. The obligation of the court was to apply the pertinent decisional law in resolving the motion before it, and that decisional law mandated that the motion be granted under the circumstances of this case.

■ The respondent court also argues that an order of sequestration will result in excluding from the jury large segments of the community except the unemployed, the retired, homemakers, and those persons whose employment provides them compensation during jury duty. We are unpersuaded by the respondent's claim. The policy of this state, as expressed in the Uniform Jury Selection and Service Act, section 13–71–101, *et seq.,* C.R.S.1973 and 1982 Supp., is that all qualified citizens should be accorded the opportunity to be considered for jury service and that these citizens have an obligation to serve as jurors when summoned for that purpose. Section 13–71–102, C.R.S.1973. In keeping with this policy, no person who is otherwise qualified for jury service is "exempt." Section 13–71–

---

section 16–11–103(4), (5), (5.1) and (6), C.R.S. 1973 (1978 Repl.Vol. 8 and 1982 Supp.).

**6.** The respondent court argues that this court's decision in *People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1977), which involved the number of peremptory challenges available to a defendant in a first degree kidnapping trial, dictates a contrary result. In *Tribe,* however, we distinguished *Hines* and put to rest the view that a nonsequestered jury was permissible in a first degree murder case when the defendant did not waive sequestration. We pointed out in *Tribe* that the statutory definition of kidnapping, as applicable to the *Hines* case, expressly provid-

ed that no person shall suffer the death penalty when the person kidnapped has been liberated alive prior to the conviction of the kidnapper. *See* section 18–3–301(2), C.R.S.1973 (1978 Repl.Vol. 8). Because the victim in *Hines* had been liberated alive before the trial began, we stated in *Tribe* that "the pertinent *statute* itself provided that no death penalty could be administered under the facts alleged in the charge." 197 Colo. at 435, 593 P.2d at 1371. In the instant case, however, the statute on which the charge of first degree murder is predicated contains no such exclusionary provision with respect to the death penalty.

111, C.R.S.1973. While the court is authorized to "excuse" a person not disqualified upon a showing of "undue hardship, extreme inconvenience, or public necessity," the excuse runs only for that period of time deemed necessary by the court, at the conclusion of which the person must reappear for jury service in accordance with the court's direction. Section 13–71–112(2), C.R.S.1973. Jury service being an obligation of citizenship, the court should not excuse a person otherwise qualified for jury service for any reason short of the statutory criteria of "undue hardship, extreme inconvenience, or public necessity" set out in section 13–71–112(2), C.R.S.1973. To the extent that the respondent's argument assumes that it may excuse a person from jury service *sua sponte* for reasons other than those contained in section 13–71–112(2), C.R.S.1973, we expressly reject it.

Crim.P. 24(f) required the respondent court to sequester the jury in this case. The court exceeded its jurisdiction in denying the request for sequestration, which was concurred in by both the defendant and the prosecution.[7]

### III.

■ We turn to the court's ruling on the admissibility of the deposition of Mr. How-lett on the basis of his inability to testify at trial because of sickness or infirmity. While our exercise of original jurisdiction is discretionary, review by original proceedings of a pretrial evidentiary ruling of a trial court is the exception rather than the rule. *See, e.g., People v. District Court of 2nd Judicial District,* 664 P.2d 247 (Colo. 1983). There is good reason in this case, however, to review that aspect of the court's ruling which sanctioned the admissibility of the deposition due to the alleged inability of the deponent to testify at trial. Not only does the ruling lack an adequate evidentiary foundation in the record, but more importantly, the issue of admissibility will most likely again be raised at trial. Addressing the issue at this time will provide the respondent court with necessary direction should the matter once more come before it.

■ Crim.P. 15(e)(2) provides that all or part of a deposition, so far as otherwise admissible under the rules of evidence, may be used at trial if "[t]he witness is unable to attend or testify because of sickness or infirmity." The primary purpose of Rule 15(e) is to safeguard the confrontation rights of the criminally accused by limiting the use of deposition testimony to narrowly defined situations of unavailability.[8] *See*

---

7. On July 14, 1983, this court amended Crim.P. 24(f), effective January 1, 1984, as follows:

"(1) In all cases, in the court's discretion, jurors may be sequestered or permitted to separate during all trial recesses, both before and after the case has been submitted to the jury for deliberation. Cautionary instructions as to their conduct during all recesses shall be given to the jurors by the court.

"(2) The jurors shall be in the custody of the bailiff whenever they are deliberating and at any other time as ordered by the court.

"(3) If the jurors are permitted to separate during any recess of the court, the court shall order them to return at a day and hour appointed by the court for the purpose of continuing the trial, or for resuming their deliberations if the case has been submitted to the jury."

Prior to the effective date of the amendment, however, the present version of Crim.P. 24(f) and our decisional interpretations of the rule are controlling on the sequestration of juries in first degree murder trials.

8. In addition to unavailability due to sickness or infirmity, Crim.P. 15(e) provides that the deposition may be admitted if the witness is dead, the proponent has been unable to secure the witness's attendance by subpoena, or the witness is out of state through no action by the proponent and his presence cannot be secured by subpoena or other lawful means. On July 14, 1983, Crim.P. 15(e) was amended, effective January 1, 1984, to provide as follows:

"Use. At the trial, or at any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if the deposed witness satisfies the definition of unavailability in C.R.E. 804(a), or the witness gives testimony at the trial or hearing inconsistent with his deposition. Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require him to offer all of it which is relevant to the part offered and any party may offer other parts."

**1390** 

generally *United States v. Wilson,* 601 F.2d 95 (3d Cir.1979); *United States v. Mann,* 590 F.2d 361 (1st Cir.1978); *Bresnahan, Jr. v. District Court,* 164 Colo. 263, 434 P.2d 419 (1967); 2 (Crim.) C. Wright, *Federal Practice and Procedure* § 241 (2d ed. 1982). This is not to say, however, that the court may dispense with the conditions of admissibility merely because the defense, rather than the prosecution, is the proponent of the deposition testimony. Deposition testimony in lieu of live testimony being the exception rather than the rule in criminal trials, Crim.P. 15(e) should be applied in a manner consistent with the principle that attendance of witnesses at criminal trials is the favored method of presenting testimony. *See, e.g., Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *United States v. Wilson, supra.*

 Unavailability within the context of Crim.P. 15(e) is to be determined at the time of trial in light of the circumstances then existing. *See, e.g., United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982); *United States v. Mann, supra;* 2 (Crim.) C. Wright, *supra,* § 245. The mere granting of a pretrial motion to depose a witness accords no presumption of unavailability at the time of trial. *United States v. Mann, supra.* Crim.P. 15(e)(2) contemplates that before a deposition is admitted into evidence, the proponent of the deposition make some showing, by evidence or stipulation, that the witness's inability to testify at trial is due to sickness or infirmity. Mere inconvenience or passing discomfort, in our view, does not satisfy the unambiguous provisions of the rule. While the trial court is necessarily vested with discretion in resolving such disputed factual issues as a witness's alleged inability to testify at trial, there must exist in the first instance an adequate evidentiary basis for the court's resolution of the disputed issue. The record in this case, however, is markedly deficient in this respect.

 Mr. Howlett's treating physician, during the hearing on May 26, 1983, testified that his patient might well be able to testify at trial, but would be inconvenienced in so doing because he would be required to forego a vacation in Alaska. The respondent court during this hearing expressly referred to the lack of any factual predicate for the use of the deposition at trial. On the very next day, however, after Mr. Howlett had again given his deposition, the court ruled the deposition admissible. Mr. Howlett's deposition testimony about his physical condition was not significantly dissimilar to the testimony of his treating physician on the previous day. Moreover, although Mr. Howlett admittedly experienced some inconvenience and personal difficulty during his deposition, he was able to adequately communicate his responses to the questions propounded to him. There was no showing by the defendant, the proponent of the deposition, that Mr. Howlett would be unable to attend the trial because of an illness or infirmity or that he would likely undergo a significant deterioration in his physical condition during the few days intervening between the date of his last deposition and the scheduled trial date. Indeed, the respondent court conceded in the course of its ruling that it was "stretching" Crim.P. 15(e) in applying it to the facts shown by the evidence.

Because the originally scheduled trial date of June 6, 1983, has already passed and this case must be reset for trial, the respondent court again must assess Mr. Howlett's physical condition before ruling on the admissibility of the deposition at trial. Crim.P. 15(e) requires the proponent of the deposition to make a showing that Mr. Howlett's physical condition, at the time of

Unavailability under C.R.E. 804(a) includes those situations in which the declarant: (1) is exempted by court ruling from testifying on the ground of privilege; (2) refuses to testify despite a court order to do so; (3) testifies to a lack of memory on the subject matter of his statement; (4) is unable to be present or to testify at the hearing due to death or physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent is unable to procure his attendance by process or other reasonable means.

his scheduled trial testimony, is such that he is unable to attend the trial and to testify before the jury. In the absence of such a showing by the proponent of the deposition, the deposition should not be admitted into evidence. If, however, the requisite showing is made, and the court so determines, then the deposition may be admitted into evidence "so far as otherwise admissible under the rules of evidence." Crim.P. 15(e).

The rule to show cause is made absolute, and the respondent court is ordered to proceed in accordance with the views herein expressed.