The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Edmundo **HERNANDEZ**, Defendant–Appellant.

No. 93CA0464.

Colorado Court of Appeals, Div. II.

Jan. 12, 1995.

Rehearing Denied Feb. 16, 1995.

Certiorari Denied July 31, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

From a judgment of conviction entered on a jury verdict finding him guilty of first degree murder after deliberation and conspiracy to commit first degree murder in a drug-related gangland-type killing, defendant, Edmundo Hernandez, appeals. He asserts error in the taking and use of the deposition of a prosecution witness and in the trial court's advisement concerning his right to testify. We affirm.

Two separate Crim.P. 15 motions were filed requesting the court to order the taking of the deposition of a witness. The People filed the first motion asserting that it was necessary to take the deposition because the witness was incarcerated in California on an unrelated charge, but was scheduled for imminent release. The motion was not supported by an affidavit. The People argued that the witness might make himself unavailable at trial because he was also a suspect in this murder and that, in light of his past criminal history, other sanctions, such as the threat of a contempt citation, would not be sufficient to induce his appearance at trial.

In objecting to the motion, the defendant asserted, *inter alia*, that Crim.P. 15 required the motion to be accompanied by an affidavit.

The trial court denied the motion, not in reliance upon the absence of an affidavit, but because it was not satisfied that the witness might be unable to attend the trial.

A second motion, this one filed by the attorney for the witness, asked the court to reconsider the People's request because, by that time, the witness had been paroled by California authorities and his deportation to Mexico was imminent. Solely to secure his testimony, the witness was incarcerated in the El Paso County jail, pursuant to an interstate subpoena, when this motion was filed.

Following a "new review of the situation," and over defendant's objection, the court ordered the witness' deposition to be taken because it concluded that, at trial, the witness might be out of the country and, therefore, unavailable. The court also ordered the witness to be subpoenaed for trial prior to his release from El Paso County custody for deportation by immigration authorities.

A videotaped deposition of the witness was taken, during which both parties questioned him at length and in detail. Defendant's counsel subpoenaed the witness to appear at trial. Thereafter, over the objection of both parties, the court ordered the witness to be released to immigration authorities, stating that it was unaware of any authority that would allow it to detain him further and that holding the witness in custody until the trial, some four months later, would not comport with notions of justice. The court ordered the witness to appear at trial, to provide an address where he could be contacted in Mexico, and to advise the court and the prosecutor of any address changes.

The witness did not appear at the trial. Acting pursuant to Crim.P. 15 and CRE 804(a) and asserting that the witness was unavailable, the prosecution moved to use his deposition as substantive evidence in its case-in-chief. In support of the motion, the prosecution showed that two letters were mailed to the witness, one of which was certified, a week before trial. The letters directed the witness to contact the prosecutor and informed him that, upon reaching the border, he would be escorted to the site of the trial. The witness did not respond.

The court allowed use of the witness' deposition at trial, noting that the witness had failed to respond to the subpoena and a specific order to appear at trial. The court concluded that the definition of unavailability had been met.

A redacted version of the witness' videotaped testimony was presented at trial. In it, the witness testified that he had accompanied the defendant on a trip from Nevada to Colorado but recounted little else that would tend to incriminate the defendant. However, the witness' deposition was impeached by the testimony of two California police officers who had interviewed the witness following his arrest on an unrelated charge. The officers' testimony provided evidence which tied the defendant to the crime. This testimony would have been hearsay and would not have reached the jury if the witness' deposition had not been presented.

## I. The Deposition

The defendant contends that the trial court erred in allowing the witness' deposition to be taken and in allowing its use at trial.

■ He argues that the court erred in allowing the deposition to be taken because the motion did not meet the requirements of Crim.P. 15. In support of this argument, he contends that the motion was not accompanied by an affidavit and that the People failed to show that the witness might be unable to appear at trial. We disagree with these contentions.

Crim.P. 15(a) provides, in pertinent part:

Upon motion ... supported by an affidavit showing that a prospective witness may be unable to attend a trial or hearing and that it is necessary to take his deposition to prevent injustice, the court may order that the prospective witness' deposition be taken.

Under Crim.P. 15(a), the trial court is entrusted with a great degree of discretion in determining whether to allow the taking of deposition testimony. *People ex rel. Faulk v. District Court,* 667 P.2d 1384 (Colo.1983). Based upon the facts before it, the trial court did not abuse its discretion in ordering the deposition to be taken.

We also hold that, under the circumstances presented here, the absence of an accompanying affidavit does not vitiate the deposition procedure.

An affidavit serves the purpose of providing the court with sufficient information to decide the merits of the motion, *i.e.*, whether the witness might be unable to attend the trial. However, we agree with the trial court that an affidavit signed by a member of the district attorney's office would have added little to the representations made at the hearing by the prosecutor as an officer of the court. The court had been thoroughly informed of the facts and circumstances supporting the request to take the deposition and defendant did not dispute those assertions; thus, we decline to interpret the affidavit requirement as being mandatory.

■■■ A different, and closer, issue is presented on the propriety of admitting portions of the deposition at trial.

Crim.P. 15(e) provides, in pertinent part: At the trial ... a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if the deposed witness satisfies the definition of unavailability in CRE 804(a).

Under CRE 804(a), "unavailability as a witness" includes, *inter alia*, one not present at the trial whose presence the proponent of the testimony has been unable to procure "by process or other reasonable means." CRE 804(a)(5). And, such unavailability is determined at the time of the trial in light of the circumstances then existing. *People ex rel. Faulk v. District Court, supra.*

■■ Deposition testimony in place of live testimony is the exception, rather than the rule, in criminal trials. *People ex rel. Faulk v. District Court, supra.* The preference for live testimony, however, occasionally must give way to the necessities of the case. *Thomas v. People,* 803 P.2d 144 (Colo.1990).

Balancing these considerations, we conclude that the trial court did not abuse its discretion in its determination that this witness met the test of unavailability and, therefore, that it did not err in allowing the deposition to be presented to the jury.

The prosecution demonstrated that good faith efforts had been made to secure the presence of this witness. At the time it released the witness, the court ordered him to appear at trial. The witness was under subpoena, albeit by the defendant. The witness was directed to inform the court and the prosecution of any change of address. Letters were mailed to the witness in Mexico informing him that he would be transported from the border to the scene of the trial.

Arguably, the prosecution could have done more; the letters could have been sent earlier, and it could have subpoenaed the witness. However, as observed by a division of this court in *People v. Arguello,* 737 P.2d 436, 438–39 (Colo.App.1987):

[G]ood faith may not require the exhaustion of *every* possible means of securing the witness' presence, especially if the means available appear futile, [or if] the witness may be in a position to frustrate efforts to compel her attendance.... (emphasis in original)

Crucial to our conclusion on this issue is the fact that defendant offers nothing to indicate that this witness, who disregarded both a defendant's subpoena and a direct order of the court, would have obeyed a subpoena issued by the prosecution or would have appeared for trial if the prosecution's letters had been mailed to him earlier.

In further support of his contention that the prosecution did not make reasonable, good faith efforts to procure the witness' attendance at trial, the defendant asserts that the prosecution should have prevented or delayed the witness' deportation by proceeding under regulations of the Immigration and Naturalization Service (INS). We are unpersuaded.

■■ Good faith efforts to assure a witness' availability at trial also include reasonable efforts aimed at keeping the witness in the United States. *See United States v. Mann,* 590 F.2d 361 (1st Cir.1978). However, "precisely how much effort is required on the part of the government to reach the level of 'good faith' and 'reasonable effort' eludes absolute resolution applicable to all cases." *United States v. Allie,* 978 F.2d 1401, 1406

(5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1662, 123 L.Ed.2d 281 (1993).

Here, the prosecution vigorously opposed the witness' release from custody. While the INS regulations provide for issuance of a written order instructing a person not to leave the United States, *see* 8 C.F.R. § 215.2(a), nevertheless, because the witness disregarded a direct court order and a subpoena to appear at trial, it is unlikely that an additional order of another governmental entity would have assured his attendance.

Under these circumstances, only custodial detention during the four months pending trial would have guaranteed the witness' appearance at trial. However, such detention was eschewed by the trial court. Furthermore, we decline to adopt a *per se* rule precluding a finding of good faith, reasonable efforts unless the prosecution attempts coercively to detain the witness in the United States. *See United States v. Allie, supra; United States v. Eufracio–Torres,* 890 F.2d 266 (10th Cir.1989), *cert. denied,* 494 U.S. 1008, 110 S.Ct. 1306, 108 L.Ed.2d 482 (1990). Therefore, we cannot say that the trial court erred by admitting the deposition based on its finding that the prosecution had met the requirements of Crim.P. 15(e) and CRE 804(a)(5).

### II.  The *Curtis* Advisement

The defendant contends that the advisement made pursuant to *People v. Curtis,* 681 P.2d 504 (Colo.1984) was deficient and that, therefore, reversal of the conviction is required. We do not agree.

A defendant in a criminal case has the constitutional right to testify in his own defense. *People v. Curtis, supra.* The required advisement must contain certain elements, *People v. Milton,* 864 P.2d 1097 (Colo. 1993), but *Curtis* does not prescribe a "litany" which must be followed in all cases. *See People v. Chavez,* 853 P.2d 1149 (Colo.1993); *see also People v. Milton, supra.* For a waiver of the right to testify to be valid, a defendant must be advised of the right to testify, the consequences of testifying, and the right to take the witness stand regard-

less of counsel's contrary advice. *People v. Curtis, supra; People v. Chavez, supra.*

The defendant asserts that the *Curtis* advisement provided by the trial court was inadequate because it failed to inform him explicitly that he could testify in spite of his attorney's contrary advice. He argues that the court confused the issue by first informing him that the decision to testify was entirely his own and then advising him that he should "always listen to what [his] attorneys say" concerning whether to testify. In our view, only by a hypertechnical analysis of the syntax employed by the court could one reach the conclusion argued for by the defendant. Thus, we reject this contention.

The judgment is affirmed.

ROY and PIERCE,\* JJ., concur.