## No. 27664

## The People of the State of Colorado v. Carl Hines

(572 P.2d 467)

Decided November 21, 1977.                    Rehearing denied January 3, 1978.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, David K. Rees, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Gene Beville, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellant was convicted by a jury of first-degree kidnapping and menacing with a deadly weapon. We affirm.

On the night of June 12, 1973, the appellant abducted Ms. C, a student, by hiding in the back of her car when she parked briefly on the campus of Colorado State University. He brandished a knife, and threatened to "slit" her throat, but assured her that he would not hurt her if she helped him get out of town.

Thus began a night of terror for Ms. C. With her driving most of the way, the two eventually drove to Wyoming. Although they made brief

stops at a gas station, a bar, and a restaurant, Ms. C was repeatedly frustrated in her efforts to draw attention to her plight or to escape. During the trip the appellant made sexual advances toward Ms. C, and after they crossed into Wyoming he twice forced her to stop the car and have sexual intercourse with him. On the second occasion he forced upon her both anal and vaginal intercourse, causing her severe pain, and an eventual kidney infection.

Finally, when the car was stopped briefly along the highway just outside Casper, Wyoming, Ms. C managed to escape and flag down a passing truck. She prevailed on the truck driver to take her immediately to the police where she reported a narrative in material respects the same as her later testimony in court.

The appellant was arrested on July 23, 1973, in Fort Collins. After being advised of his rights, he stated that on the night of June 12 he had been in Fort Collins, had seen a young woman park her car, and had crawled into the vehicle's back seat to take a nap. He admitted that when the woman returned and entered her car, he had pulled a knife and threated to harm her if she did not help him get out of the state. Further, he admitted twice having had intercourse with her in Wyoming.

The victim testified that throughout the trip from Fort Collins to Casper, the appellant repeatedly admonished her that if she wanted to survive she would have to comply with his demands. He told her that he had killed his father and that, "I have cut people up before and I can do it again." She acted throughout with "a very distinct realization . . . that if I didn't (comply) I would be dead." In that frame of mind, and in the hope that she could live through the abduction by cooperating, she drove the armed appellant in her car and acceded to his taking ten dollars from her purse for gasoline.

After the appellant's capture, a federal kidnapping charge was filed against him in the United States District Court for Wyoming. In September, 1973, however, as the result of plea bargaining, the appellant pleaded guilty to the federal crimes of interstate transportation of a motor vehicle and interstate transportation of a female for immoral purposes. The federal kidnapping charge was dismissed.

In August, 1974 the instant case was filed in the Larimer County District Court charging the appellant with rape, first-degree kidnapping, menacing with a deadly weapon, and deviate sexual intercourse by force. All these charges arose from the same series of incidents upon which the Wyoming federal prosecution had been based.

I.

■   The appellant's initial contention is that the first-degree kidnapping statute is unconstitutionally vague, ambiguous, and overbroad. We do not agree.

First-degree kidnapping is thus defined:

"(1) Any person who does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first degree kidnapping:

"(a) Forcibly seizes and carries any person from one place to another; or

"(b) Entices or persuades any person to go from one place to another; or

"(c) Imprisons or forcibly secretes any person.

"(2) Whoever commits first degree kidnapping is guilty of a class 1 felony if the person kidnapped shall have suffered bodily injury; but no person convicted of first degree kidnapping shall suffer the death penalty if the person kidnapped was liberated alive prior to the conviction of the kidnapper.

"(3) Whoever commits first degree kidnapping commits a class 2 felony if, prior to his conviction, the person kidnapped was liberated unharmed." Section 18-3-301, C.R.S. 1973.

Specifically, the appellant first argues that the words "any concession," "anything of value," "liberated unharmed" and "persuades" are not defined in the statute and are so vague and broad that they provide no guidance to persons of ordinary intelligence.

An essential element of due process is that a statute defining a crime state its requirements with reasonable clarity. *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975); *People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). However, the appellant has failed to meet his burden of proving this statute unconstitutional. *See People v. Blue, supra.* The instant statute is sufficiently definite to give reasonable notice of the proscribed conduct to one who would avoid its penalties, to guide the trial judge in its application, and to guide counsel in defending one charged with its violation. There is no requirement that every term used in a statute be defined, especially when the words employed are in common usage and readily understood. *People v. Blue, supra.*

The appellant further argues that the first-degree kidnapping statute, *supra*, is indistinguishable from the second-degree kidnapping statute (section 18-3-302, C.R.S. 1973) and therefore equal protection requirements are violated. However, it is only where the *same* criminal conduct is proscribed by both statutes that such a constitutional infirmity exists. *People v. Hulse*, 192 Colo. 302, 557 P.2d 1205 (1976); *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). That situation does not exist here. First-degree kidnapping occurs only if the kidnapper intends "to force the victim or any other person to make any concession or give up anything of value in order to secure a release. . . ." Section 18-3-301(1), C.R.S. 1973. This element is not required for second-degree kidnapping; therefore, the statutes are clearly distinguishable.

The appellant's third contention relates to section 18-3-301, paragraphs (2) and (3), *supra*, which provide that first-degree kidnapping is a class one felony if the victim suffers "bodily injury," but that it is a class two felony if the victim is "liberated unharmed." The appellant asserts that "bodily injury" can be construed to include nearly any minor effect, such as fright or shock, and therefore the distinction between the two felonies is meaningless. He argues that the statute, thus interpreted, violates the equal protection clause.

"Bodily injury" is defined as "physical pain, illness, or any impairment of physical or mental condition." Section 18-1-901(3)(c), C.R.S. 1973. Admittedly this is a broadly inclusive definition; nevertheless it creates a meaningful distinction between cases in which bodily injury is inflicted and those in which it is not. To support a finding of bodily injury the prosecution must prove that at least some physical pain, illness or physical or mental impairment, however slight, was caused by the kidnapper. In our view this additional element of proof justifies the imposition of different penalties, and therefore the statute passes constitutional muster.

It may be that in some cases injuries might be so trifling as to be excluded from the category of "bodily injury" the legislature contemplated. Should such a borderline case arise, the question whether bodily injury occurred would be one of statutory construction. *Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945). Here, however, no such undertaking is necessary. The forcible sexual acts which caused extreme physical pain and the subsequent kidney infection clearly satisfy the statutory definition of bodily injury.

## II.

The appellant next asserts that the trial court erroneously limited him to ten peremptory challenges. He argues that under section 16-10-104, C.R.S. 1973, which allows fifteen such challenges in capital cases, he was entitled to five additional challenges. His argument is unpersuasive.

One found guilty of first-degree kidnapping can suffer the death penalty only if the victim has not been liberated alive prior to the conviction. Section 18-3-301(2), C.R.S. 1973. In this case, since Ms. C escaped alive before the trial began, the death penalty was not even a possibility. Therefore the trial court correctly limited the appellant to ten peremptory challenges.

## III.

The appellant also claims that he has been denied "fundamental fairness" as a result of several circumstances of his trial.

First, he maintains that this Colorado prosecution should not have been permitted, because it was based on the same conduct as the prior federal prosecution which had resulted in his conviction based on the plea bargain. In support of this proposition, the appellant cites section 18-

1-302, C.R.S. 1973:

"*Second trial barred by former prosecution for different offense.* (1) Although a prosecution is for a violation of a different provision of law than a former prosecution or is based on different facts, it is barred by the former prosecution under the following circumstances:

"(a) The former prosecution resulted in an acquittal or a conviction as defined in section 18-1-301(1)(a) and (1)(c), and the subsequent prosecution is for:

"(I) Any offense of which the defendant could have been convicted under the allegation of the complaint, information, or indictment of the first prosecution; or

"(II) The same conduct, unless the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of the offenses is intended to prevent a substantially different harm or evil, or the second offense was not consummated when the former trial began.

"(b) The former prosecution was terminated by an acquittal or by a final order or judgment for the defendant that has not been set aside, reversed, or vacated and that necessarily required a determination inconsistent with a fact that must be established for conviction of the second offense.

"(c) The former prosecution was improperly terminated, as improper termination is defined in section 18-1-301(1)(d) and (2), and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been improperly terminated."

The appellant's reliance on this provision is not well-founded. Section 18-1-302 must be read to deal with multiple prosecutions in the *same jurisdiction, i.e.,* Colorado, since a separate statute, section 18-1-303, C.R.S. 1973, sets out the circumstances in which a second trial in Colorado is barred by a former prosecution in *another* jurisdiction.[1] Clearly, section 18-1-302 cannot be construed to bar separate prosecutions for *different* state and federal offenses arising out of the same series of transactions, for such trials could not be held in the same court. Similarly, it is well-established that under the dual sovereignty doctrine both the state and federal governments may prosecute a person for the same offense. *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). *Cf. Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). Federal prosecutors have no authority to bargain away a state's

---

[1]The appellant has not contended that section 18-1-303 bars this prosecution, and examination of its provisions reveals that it does not.

power to enforce its criminal law.

Second, the appellant assigns error to the trial court's admission of Ms. C's testimony regarding the sexual acts which occurred in Wyoming, and which the appellant characterizes as separate and distinct from the crimes charged in this Colorado proceeding. He complains that the testimony was highly prejudicial, and that no proper cautionary instruction was given.

Evidence of other criminal conduct which was part of the same transaction that gave rise to the offense on trial may be admissible to show the "total picture" surrounding the crime charged. *People v. McKay*, 191 Colo. 381, 553 P.2d 380 (1976); *People v. Manier*, 184 Colo. 44, 518 P.2d 811 (1974); *People v. O'Donnell*, 184 Colo. 104, 518 P.2d 945 (1973); *Johnson v. People*, 174 Colo. 413, 484 P.2d 110 (1971).

Moreover, the evidence of forced, painful sexual intercourse was independently admissible because it was relevant to the question whether the kidnapping was a class 1 or a class 2 felony. First-degree kidnapping is a "class 1 felony if the person kidnapped shall have suffered bodily injury. . . ." Section 18-3-301(2). But it is a class 2 felony if "the person kidnapped was liberated unharmed. . ." before the perpetrator is convicted. Section 18-3-301(3). This evidence, therefore, was essential to proving that Ms. C had suffered "bodily injury," and had not been "liberated unharmed." Evidence showing these facts, even though inextricably interwoven with evidence of the Wyoming rapes, was necessary to determine the particular class of felony of which the defendant was guilty in Colorado. Hence, as evidence essential to prove elements of the crime charged, this evidence was admissible. *See Johnson v. People, supra.*

The trial court gave a cautionary instruction limiting the use of evidence of similar, independent criminal transactions. Such an instruction was not even necessary regarding the rapes, however, since, as stated, their proof was incidental to proving the class of the felony charged. *See, e.g., Dickerson v. People*, 179 Colo. 146, 499 P.2d 1196 (1972).

Third, the appellant challenges the trial court's rulings on two other jury instructions. A careful review of the record and consideration of the appellant's arguments, has led us to conclude that no reversible error was committed by those rulings, nor did they deprive the defendant of a fair trial.

## IV.

Finally, the appellant maintains that there was insufficient evidence to support the convictions. The record, however, contains substantial evidence, much of it undisputed, to prove each element of the crimes for which the appellant was convicted.

Accordingly, the judgment of the trial court is affirmed.