### No. 79SA457

### The People of the State of Colorado v. Sammy Naranjo

(612 P.2d 1099)

Decided May 19, 1980.                    Rehearing denied July 14, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Lynne Ford, Assistant Attorney General, Litigation Section for plaintiff-appellee.

R. B. Fickel, for defendant-appellant.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

The defendant Sammy Naranjo appeals his conviction for first-degree kidnapping and first-degree sexual assault. We reverse the defendant's conviction for first-degree kidnapping and affirm his conviction for first-degree sexual assault.

Between 6:00 and 7:00 p.m. on September 25, 1976, the victim, who was spending the week-end with friends near Estes Park, and another woman went for a walk along Highway U.S. 34 toward the point where the highway was closed because of damage from the Big Thompson flood. As they returned, a car approaching them stopped and the occupants asked if they wanted a ride. They declined. The car made a U-turn, and again stopped beside them. Again the women declined the offered ride. This time a man in the back seat got out of the car and grabbed the victim's friend. The victim attempted to free her friend, and a second man, the defendant, got out of the front passenger seat, and hit the victim in the head. Meanwhile, the first woman freed herself and ran down into the Big Thompson River. She looked back to see the two men shove the victim into the car and leave at a high rate of speed. The woman who escaped continued across the river to a lighted house and called the police.

The car headed into Estes Park and then toward Lyons on U.S. 36. In the back seat, the victim was subjected to involuntary sexual intercourse with each of the three men. The car stopped only long enough for the men to exchange places. The victim testified that she was hit continually and that the defendant was the most brutal of her three captors.

4

After about twenty minutes, the car turned up a dirt road and two miles further, stopped. The defendant and his companions forced the victim to lie on the floor of the back seat and then shoved her head first out of the car. They dragged her to a nearby grassy area, and, while continuing to hit her, forced her to have oral, anal, and vaginal sexual relations with all three of them. The assault was interrupted by the arrival of a State Patrol car, and the defendant and his two companions fled. The sheriff found the defendant nearby later that evening.

The victim, who sustained a number of cuts and bruises, ran to the patrol car. She testified that, had the patrolman not arrived, she did not know what the men would have done with her. Although the defendant and his companions spoke to her in English, they conversed among themselves in Spanish. At no time did they suggest that she would be released if she complied with their demands.

The trial court severed the cases against the defendant and his companions. A jury found the defendant guilty of first-degree kidnapping and first-degree sexual assault. He was sentenced to life imprisonment for kidnapping and forty-five and one-half to fifty years in the penitentiary for sexual assault, the sentences to be served concurrently.

The defendant contends on appeal that there was insufficient evidence to support a first-degree kidnapping conviction. He challenges the constitutionality of the first-degree sexual assault statute because it does not include a *mens rea* element, and he questions the trial court's refusal to accept an instruction on second-degree sexual assault. In addition, the defendant seeks review of his sentence for sexual assault.

## I.

The defendant questions the sufficiency of the evidence of first-degree kidnapping because there was no proof that the seizure and movement was done with

"the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control . . . ."
Section 18-3-301(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8).

In *People v. Bridges*, 199 Colo. 520, 612 P.2d 1110 (1980), we determined that the language "to make any concession" in the first-degree kidnapping statute does not include submission of a victim to actual application of physical force or physical violence as set forth in the first-degree sexual assault statute, section 18-3-402(1)(a), C.R.S. 1973 (1976) Supp.; current version in 1978 Repl. Vol. 8).[2] The facts here fall within

---

[1] *See also People v. Naranjo*, 200 Colo. 11, 612 P.2d 1106 (1980).
[2] Section 18-3-402(1)(a), C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8), provides: "Any actor who inflicts sexual penetration on a victim commits a sexual assault in the first-degree if . . . [t]he actor causes submission of the victim through the actual application of physical force or physical violence."

subsection (1)(a) of the statute. The assault by the defendant was a crime of physical force or violence. The victim had no choice in the matter, and the assault ended when the police arrived. Such evidence is insufficient to support first-degree kidnapping under the statute as construed in *Bridges*.

As a matter of law, the evidence here is sufficient only to sustain a conviction for second-degree kidnapping.[3] Because the trial court instructed the jury on second-degree kidnapping and there is sufficient evidence to support a conviction for second-degree kidnapping, we remand the case to the trial court to enter judgment and sentence for the lesser included offense of second-degree kidnapping. *See People v. Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976).

## II.

The defendant was convicted of first-degree sexual assault under section 18-3-402, C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8),[4] He contends that the omission of language specifically referring to mental culpability, a *mens rea* element, makes the statute unconstitutional.

Legislative silence on the element of intent in a criminal statute is generally not construed as an indication that no culpable mental state is required. In fact, the United States Supreme Court in construing federal legislation has held that the basic definition of a crime usually requires the conjunction of an act and a culpable mental state. *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed.288 (1952). This required mental state may be implied from the statute. *Cf. United States Gypsum, supra; Morissette, supra; State v. Berry,* 101 Ariz. 310, 419 P.2d 337 (1966). *Cf. People v. Washburn,* 197 Colo. 419, 593 P.2d 962 (1979) (where the court construed the words "intentionally" and "knowingly" to determine legislative intent with regard to mental state). Moreover, as the United States Supreme Court held in *Morissette,* the mental state is a question of fact which must be presented to the jury. *See also People v. Washburn, supra.*

The trial court therefore correctly instructed the jury on the requisite element of culpable mental state [*Colorado Jury Instructions*

---

[3] Section 18-3-302, C.R.S. 1973 (current version in 1978 Repl. Vol. 8) provides: "Any person who forcibly or otherwise seizes and carries any person from one place to another without his consent and without lawful justification commits second-degree kidnapping . . . ."
[4] See footnote 1. The later amendment added the term "knowingly." Section 18-3-402, C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8).

*(Criminal)* 6:1] and that sexual penetration must be inflicted "unlawfully and knowingly." The existence of a culpable mental state was considered by the jury as an essential element of the crime, and thus, the defendant was not deprived of due process.

### III.

The defendant also questions the trial court's refusal to instruct the jury on second-degree sexual assault. However, an instruction on a lesser offense is required only when there is "some evidence" to support the charge as defendant's theory of the case or when "there is a rational basis for the jury to acquit the defendant of the greater offense but convict him of the lesser offense." *People v. White,* 191 Colo. 353, 356, 553 P.2d 68, 70 (1976).

Second-degree sexual assault is committed when "[t]he actor causes submission of the victim to sexual penetration by any means *other than those set forth in section 18-3-402,* but of sufficient consequence reasonably calculated to cause submission against the victim's will." (Emphasis added.)

Section 18-3-403(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8). One of the means set forth in section 18-3-402 is "through the application of physical force or physical violence." There was uncontroverted evidence in this case that the sexual penetration was obtained by means of physical force, and therefore, it is not error for the trial court to refuse to instruct the jury on the lesser offense of second-degree sexual assault.

### IV.

Finally, the defendant seeks appellate review of the propriety of his sentence and the propriety of the sentencing proceeding. On review of the propriety of the sentence, we consider three factors: (1) the nature of the offense, (2) the public interest, and (3) the character of the offender. *People v. Malacara,* 199 Colo. 243, 606 P.2d 1300 (1980).

The trial court sentenced the defendant to forty-five and one-half to fifty years in the penitentiary for the first-degree sexual assault conviction. The minimum sentence for first-degree sexual assault is ten years, and the maximum sentence is fifty years. Section 18-1-105(1), C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8). When the maximum, or near-maximum sentence such as the one here, is imposed, it "must be supported by sound reasons in the record." *People v. Strong,* 190 Colo. 189, 192, 544 P.2d 966, 967 (1976). In imposing sentence, the trial court stated that the decision was based on the evidence presented at the sentencing hearing, psychiatric reports from an evaluation under the Sex Offenders Act, section 16-13-201, *et seq.,* C.R.S. 1973 (1978 Repl. Vol. 8 and 1979 Supp.), the probation department's report, the staff psychologist's report, the evidence presented at trial, the nature of the crimes, the defendant's character, the possibility of rehabilitation, the need to protect the public from the defendant, the need to punish the defendant,

and the deterrent effect of such punishment.

The defendant challenges the sentence primarily because he had no significant criminal history. The lack of a prior criminal record is only one consideration. The trial court properly considered the depravity of the crime, *People v. Euresti,* 187 Colo. 266, 529 P.2d 1319 (1975), the need to protect the public safety, *People v. Campbell,* 188 Colo. 79, 532 P.2d 945 (1975), and the probability of the offender's rehabilitation. *People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975). The sentence is supported by substantial evidence, and we cannot say that the trial court abused its discretion in imposing a severe sentence.

The defendant also challenges the trial court's comment, when imposing a life sentence for the first-degree kidnapping conviction, that the defendant not be considered eligible for parole "until he had served a minimum of twenty-two years rather than the usual ten years."[5] The defendant maintains that taking parole eligibility into account is not a judicial function and improperly infringes on executive authority in determining parole. We need not reach this consideration because we have vacated the conviction and sentence for first-degree kidnapping.

We affirm the judgment of the trial court on first-degree sexual assault, and we reverse the judgment of the trial court on first-degree kidnapping. The cause is remanded for further proceedings consistent with this opinion.

JUSTICE LEE and ROVIRA concur in part and dissent in part.

JUSTICE LEE concurring in part and dissenting in part.

I respectfully dissent in part I.

I concurred in *People v. Bridges, supra,* for the reason that there was no evidence of asportation, an essential element of kidnapping as charged under section 18-3-301(1)(a), C.R.S. 1973. By reason of this *Bridges* became only a first-degree sexual assault case under section 18-3-402, C.R.S. 1973.

In the present case, the evidence of asportation was overwhelming.

The jury was properly instructed as to the law of first-degree kidnapping, including the element of "concession." By its verdict of guilty, the jury found the element of concession to have been established beyond a reasonable doubt. There is ample evidence in the record from which this conclusion could be reached.

---

[5] Section 17-1-207(3), C.R.S. 1973 [current version at section 17-2-207, C.R.S. 1973 (1978 Repl. Vol. 8, 1979 Supp.)], which was in effect at the time the defendant was convicted, provided that one serving a life sentence would not be eligible for parole consideration until he had served ten years.

I would therefore affirm the judgment of conviction of first-degree kidnapping.

JUSTICE ROVIRA concurring in part and dissenting in part:

In *People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980), the court adopted a new rule to be applied in cases in which a defendant is charged, on the basis of a single criminal episode, with both first-degree sexual assault under section 18-3-402(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), and first-degree kidnapping under section 18-3-301(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8). The *Bridges* majority stated that the first-degree kidnapping statute could not be used in such cases to secure enhanced punishment for conduct which "amounts in substance" only to first-degree sexual assault. The majority imposed a "restrictive scope" on the extent to which a victim's forced submission to first-degree sexual assault, as defined in section 18-3-402(1)(a), could constitute a "concession" within the meaning of section 18-3-301(1)(a).

In interpreting the holding in *Bridges,* the majority here has stated that "the language 'to make any concession' in the first-degree kidnapping statute does not include submission of a victim to actual application of physical force or physical violence as set forth in the first-degree sexual assault statute, section 18-3-402(1)(a)." As a result of this interpretation of *Bridges,* I conclude that, as a practical matter, even when a first-degree sexual assault is accompanied by substantial movement of the victim by the assailant, conviction for first-degree kidnapping is not possible.

Through its analysis of the phrase "to make any concession," the majority has in effect held that a defendant who commits a first-degree sexual assault may also be found guilty of first-degree kidnapping only in those cases in which he has used words such as "I will let you go if you do what I tell you" or "I will kill you unless you do what I tell you." In my view, the specific intent to force the victim to make a concession in order to secure her release, necessary for a conviction under section 18-3-301(1)(a), need not be established solely by such direct evidence. It may be circumstantially established by the acts of the defendant which the victim perceives as demanding a concession. Specific intent is ordinarily inferable from the facts, and proof thereof is necessarily by circumstantial evidence. *Johnson v. People,* 174 Colo. 413, 417, 484 P.2d 110, 112 (1971); *Peterson v. People,* 133 Colo. 516, 297 P.2d 529 (1956).

In *Bridges,* the court gave great weight to the two-prong test set out in *People v. Daniels,* 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969). That test raised the questions of whether the movement of the victim substantially increased the risk of harm over and above that necessarily presenting the crime itself and of whether the movement was incidental to the commission of the crime.

Applying the California test to the case *sub judice,* there can be little doubt that the movement of the victim substantially increased her risk of harm and that it was more than incidental to the crime. The California Supreme Court in *People v. Thornton,* 11 Cal.3d 738, 523 P.2d 267, 114 Cal. Rptr. 467 (1974), applied the *Daniels* test as follows:

"In the incident involving Eileen S. defendant forced his way into the victim's car and, seizing her around the throat with his arm, informed her that he wanted her money. Rather than carrying out the robbery at that location, however, defendant started the car and drove the victim several blocks — steering with one hand while keeping her pinioned to the seat by means of his arm around her throat. After parking the car defendant took the victim's money and then proceed[ed] with a sexual assault upon her.

"In the incident involving Ottilia J. defendant approached the victim from the rear while she was standing outside a tavern, held a pistol at her back, and ordered her to walk down the street with him. He walked her thus at gunpoint approximately one block to a car parked behind a service station and forced her to enter it. There he ordered her to disrobe and, when she had done so, took money from her purse. Then defendant commences a sexual assault which lasted several hours.

"It is clear that the asportation of the victim in each of these cases was not 'merely incidental to the commission of the robbery' and that such movement 'substantially increase[d] the risk of harm over and above that necessarily present in the crime of robbery itself.' The fact that in each case defendant chose to consummate the robbery at a location remote from the place of initial contact does not render the subsequent asportation 'merely incidental' to the crime, for it is the very fact that defendant utilized substantial asportation in the commission of the crime which renders him liable to the increased penalty of section 209 if that asportation was such that the victim's risk of harm was substantially increased thereby. Clearly, any substantial asportation which involves forcible control of the robbery victim such as that occurring in this case exposes her to grave risks of harm to which she would not have been subject had the robbery occurred at the point of initial contact." *Id.,* 11 Cal.3d at 767-768, 523 P.2d at 286-287, 114 Cal. Rptr. at 486-487 (footnote omitted).

The majority in *Bridges* attempts to distinguish *People v. Molina,* 41 Colo. App. 128, 584 P.2d 634 (1978), on the grounds that in that case "the defendant warranted, and the victim perceived, that her freedom was dependent upon her submission to the sexual assault." In my view, what the defendant did in this case fully supports the conclusion that his acts, without saying more, were of such a nature that the victim could perceive that her freedom and safety were dependent on her submission to his demands.

In *People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1978), this court upheld a first-degree sexual assault and a first-degree kidnapping conviction on analoguous facts. In *Hines* the defendant hid in the victim's car and, when she got in, placed a knife to her throat and told her to drive away. During the drive, he threatened and sexually assaulted her. This court, in affirming the conviction for first-degree kidnapping, and in response to the defendant's argument that the words "any concession" or "anything of value" are vague and overbroad and that the first-degree kidnapping statute is indistinguishable from the second-degree kidnapping, said:

"An essential element of due process is that a statute defining a crime state its requirements with reasonable clarity. *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975); *People v. Cardwell,* 181 Colo. 421, 510 P.2d 317 (1973). However, the appellant has failed to meet his burden of proving this statute unconstitutional. *See People v. Blue, supra.* The instant statute is sufficiently definite to give reasonable notice of the proscribed conduct to one who would avoid its penalties, to guide the trial judge in its application, and to guide counsel in defending one charged with its violation. There is no requirement that every term used in a statute be defined, especially when the words employed are in common usage and readily understood. *People v. Blue, supra.*

"The appellant further argues that the first-degree kidnapping statute, *supra,* is indistinguishable from the second-degree kidnapping statute (section 18-3-302, C.R.S. 1973) and therefore equal protection requirements are violated. However, it is only where the *same* criminal conduct is proscribed by both statutes that such a constitutional infirmity exists. *People v. Hulse,* 192 Colo. 302, 557 P.2d 1205 (1976); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). That situation does not exist here. First-degree kidnapping occurs only if the kidnapper intends 'to force the victim or any other person to make any concession or give up anything of value in order to secure a release . . . .' Section 18-3-301(1), C.R.S. 1973. This element is not required for second-degree kidnapping; therefore, the statutes are clearly distinguishable." *Id.,* 194 Colo. at 288, 572 P.2d at 470.

The only pertinent difference between the facts in *Hines* and those in the case at bar is that, in *Hines,* the defendant articulated his threat that the victim would have to comply with his demands in order to survive, while, in this case, the defendant used force to impose his will on the victim and did not articulate his demand or threat in words similar to those used by the defendant in *Hines.* I would follow the rationale of *Hines,* and therefore affirm both the conviction for first-degree sexual assault and for first-degree kidnapping.