**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robert Paul GOLDFUSS, Defendant–Appellant.**

No. 02CA1412.

Colorado Court of Appeals, Div. I.

May 6, 2004.

As Modified on Denial of Rehearing Sept. 2, 2004.

Ken Salazar, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, John Joseph Briggs, Deputy State Public Defender, Andrea Berry McDaniel, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Robert Paul Goldfuss, appeals the judgment of conviction entered upon a jury verdict finding him guilty of third degree assault. Defendant also appeals the sentence imposed. We affirm.

The victim testified that defendant, her common law husband, pushed her and struck her with a gun. The victim suffered bruising on her arms and leg and a gash to her head that required stitches.

## I.

■ Defendant first argues that the trial court erred by excluding evidence of his peaceful nature and his lack of a criminal record. We disagree.

■ Whether evidence is relevant is within the sound discretion of the trial court, and its determination will not be disturbed unless there was an abuse of discretion. *People v. Roybal*, 55 P.3d 144, 150 (Colo.App.2001).

■ With certain exceptions, evidence of a trait of a defendant's character is not admissible for the purpose of proving that the defendant acted in conformity therewith on a particular occasion. CRE 404(a). Under one exception, a defendant may offer evidence of "a pertinent trait of his character." CRE 404(a)(1). A defendant's law-abiding character is a pertinent trait in any criminal prosecution. *People v. Miller*, 890 P.2d 84, 92 (Colo.1995).

CRE 405 delineates the manner by which character may be proved:

(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) Specific instances of conduct. Except as limited by [the rape shield statute and the statute governing evidence of similar transactions in prosecutions for sexual offenses], in cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct.

Here, defendant attempted to establish, through his own testimony and through cross-examination of the victim, that he had never been convicted of a criminal offense. The trial court concluded that this evidence was not relevant and refused to admit it.

We agree with the trial court that evidence showing defendant had never been convicted of an offense was not evidence of a "pertinent trait" under CRE 404(a)(1). A person may violate a law without ever being prosecuted. *See State v. Bogle*, 324 N.C. 190, 200, 376 S.E.2d 745, 751 (1989)(evidence of a lack of prior convictions is not evidence of a trait of character). Thus, the absence of a criminal conviction does not necessarily demonstrate a defendant's law-abiding character.

Further, nonoccurrence evidence is improper under CRE 405 because it is not in

the form of an opinion and it does not describe a specific instance of conduct. *See State v. Bogle, supra* (evidence showing defendant had not been convicted of an offense was not admissible as substantive evidence of defendant's character because it was not opinion testimony addressing the relevant trait of abiding by all laws).

Thus, we conclude the trial court acted within its discretion. Accordingly, we also reject defendant's related claims that the trial court's ruling violated his rights to due process, to effective assistance of counsel, or to testify in his own behalf.

## II.

We also are not persuaded by defendant's challenges to the constitutionality of the third degree assault statute and to the instructions given under that statute.

### A.

■ Defendant argues that the third degree assault statute is unconstitutional because it incorporates a vague definition of "bodily injury" to include "any impairment of . . . mental condition." We disagree.

As relevant here, a "person commits the crime of assault in the third degree if he knowingly or recklessly causes bodily injury to another person." Section 18–3–204, C.R.S.2003. " 'Bodily injury' means physical pain, illness, or any impairment of physical or mental condition." Section 18–1–901(3)(c), C.R.S.2003.

■ A statute is presumed to be constitutional, and the party challenging it has the burden to prove beyond a reasonable doubt its unconstitutionality. *People v. Longoria,* 862 P.2d 266 (Colo.1993).

In *People v. Wood,* 743 P.2d 422, 431 (Colo. 1987), the supreme court rejected a void for vagueness challenge to the definition of "bodily injury" in § 18–1–901(3)(c), holding that it was "not so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." Nevertheless, defendant here argues that we are not bound by *Wood* because the defendant in that case admitted that the victim suffered some pain and the supreme court was not called upon to address the portion of

the definition pertaining to "impairment of . . . mental condition."

We agree the court in *Wood* did not separately address the "impairment of . . . mental condition" language. However, *Wood* implicitly approved this language because it rejected a vagueness challenge directed at the entire definition of "bodily injury." Moreover, the court in *Wood* relied heavily on its earlier decision in *People v. Hines,* 194 Colo. 284, 289, 572 P.2d 467, 470 (1977), in which it recognized a sufficient distinction between two offenses for equal protection purposes because one of the offenses had "bodily injury" as an element. This reliance is of significance for our present inquiry because in *Hines* the court concluded that the definition of "bodily injury" in the statute that is currently § 18–1–901(3)(c) could be interpreted to exclude "trifling" injuries or "minor effect[s], such as fright or shock."

Consequently, we conclude *Wood* is dispositive of defendant's vagueness claim.

### B.

■ Defendant next argues that the third degree assault statute and the statutory definition of "bodily injury" are unconstitutionally overbroad because they proscribe any conduct that causes emotional injury. We disagree.

■ The purpose of the overbreadth doctrine is to protect persons whose speech or conduct is constitutionally protected but who may well refrain from exercising their rights for fear of criminal sanctions imposed under a statute susceptible of application to protected expression. To effectuate this purpose, standing to attack a statute for overbreadth is conferred on a defendant convicted under the statute even when the defendant's conduct is clearly unprotected and could be proscribed by a statute drawn with the requisite specificity. *People v. Hickman,* 988 P.2d 628, 635–36 (Colo.1999).

■ An overbreadth analysis involves two questions. First, the court must determine whether the statute at issue encompasses constitutionally protected communications. Second, if the statute extends to protected communications, the court must determine

whether it extends to such a substantial amount of protected communication that it is unconstitutional, or whether unconstitutional applications of the statute can be cured on a case-by-case basis. A court must apply a limiting construction or partial invalidation if doing so will preserve the statute's constitutionality. *People v. Hickman, supra.*

Here, defendant argues that the language pertaining to causing "any impairment . . . of mental condition" prohibits the exercise of any number of constitutional freedoms, including communication of bad news or verbal criticism that results in hurt feelings. We conclude the definition of "bodily injury" can be logically interpreted narrowly so that it does not reach constitutionally protected speech.

When construing a statute, we are guided by several basic principles of statutory interpretation. Our goal is to ascertain and carry out the intent of the General Assembly. Toward that end, words and phrases used in statutes are to be interpreted according to their generally accepted meaning. *People v. Nix,* 42 P.3d 41 (Colo.App. 2001).

As noted above, in *People v. Hines, supra,* the supreme court observed that "bodily injury" should be interpreted to exclude "trifling" injuries or "minor effect[s], such as fright or shock." Under this interpretation, the third degree assault statute does not reach protected speech and therefore is not unconstitutionally overbroad. *See People v. Hickman, supra,* 988 P.2d at 636 (rejecting an overbreadth challenge to the term "threat" in the witness and victim retaliation statute, § 18–8–706, C.R.S.2003, by narrowly construing the statute to include only expressions of intent to commit harm or injury to another's person, property, or rights through the commission of an unlawful act).

Accordingly, the statute is not unconstitutionally overbroad.

### C.

Defendant argues that the jury instruction defining "bodily injury" in accordance with the language of § 18–1–901(3)(c) constituted reversible error because the court did not define "any impairment of . . . mental condition." We disagree.

Generally, instructions phrased in the language of the statute are proper. *People v. Silva,* 987 P.2d 909, 917 (Colo.App. 1999).

Here, defendant did not object at trial to the instruction upon which he now bases his claim of error. The constitutional objections discussed in the preceding sections of this opinion were first made in a motion for a new trial. Therefore, we conduct our review under the plain error standard. *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)(absent an objection at trial to the instructions given, an appellate court applies the plain error standard of review).

To prevail on a claim of instructional plain error, the defendant must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction. *People v. Close,* 22 P.3d 933, 937 (Colo.App.2000), *aff'd,* 48 P.3d 528 (Colo.2002).

No such possibility exists in this case. In opening statements and closing arguments, and throughout the presentation of the evidence, both parties made clear to the jury that the contested issue relevant to the "bodily injury" element was the cause of the victim's quite visible *physical* injuries. Thus, there is no support for defendant's speculation that the jury might have based its finding of "bodily injury" on the victim's testimony indicating that she was frightened during the assault.

Accordingly, we conclude the absence of a definition of the phrase "impairment of . . . mental condition" was not plain error.

### III.

Finally, defendant argues that, because the jury did not make a finding that he committed "an act of domestic violence," the trial court lacked authority to order domestic violence treatment as a condition of his probation. Again, we disagree.

In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, 455 (2000), the Supreme Court held: "Other than the fact of a prior conviction,

any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Divisions of this court have repeatedly distinguished *Apprendi* where the mere fact of conviction exposes a defendant to a sentencing range within which the defendant is sentenced. *See, e.g., People v. Rivera,* 62 P.3d 1056 (Colo.App.2002); *People v. Allen,* 78 P.3d 751 (Colo.App.2001).

Here, defendant's conviction exposed him to the possibility of a probationary sentence with whatever conditions the court deemed best. *See* § 18–1.3–202(1), C.R.S.2003 ("When it appears to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, the court may grant the defendant probation for such period and upon such terms and conditions as it deems best."). One such possible condition was domestic violence treatment. *See* § 18–6–801(1)(c), C.R.S.2003 ("Nothing in [§ 18–6–801(1) ] shall preclude the court from ordering domestic violence treatment in any appropriate case.").

Accordingly, we conclude that, under *Apprendi,* the trial court had authority to order domestic violence treatment as a condition of defendant's probation without a jury finding that defendant committed an "act of domestic violence."

The judgment and sentence are affirmed.

Judge TAUBMAN and Judge WEBB concur.