The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 17, 2020

## 2020COA136

**No. 17CA0317, *People v. Black* — Juries — Impasse — Supplemental Instruction When Jurors Fail to Agree — Modified-*Allen* Instruction**

A division of the court of appeals concludes that when a deliberating jury's question indicates that it might be at an impasse, the trial court must first determine whether progress towards a unanimous verdict is likely. After making this threshold determination, the trial court should exercise its discretion in deciding whether (and, if appropriate, how) to instruct the jury to continue deliberating. This threshold determination is necessary because any instruction to the jury to continue deliberating, even a modified-*Allen* instruction, may be improperly coercive based on the unique circumstances of the case.

The jury in this case submitted a question to the trial court suggesting that the jury might be at an impasse. Without making the threshold determination of whether progress towards a unanimous verdict was likely, the trial court instructed the jury to continue deliberating. The division concludes that failing to make this threshold determination was an abuse of discretion that requires reversal.

COLORADO COURT OF APPEALS                                    2020COA136

---

Court of Appeals No. 17CA0317
El Paso County District Court No. 16CR1507
Honorable David A. Gilbert, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Latrice Monique Black,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE PAWAR
Román and Tow, JJ., concur

Announced September 17, 2020

---

Philip J. Weiser, Attorney General, Megan C. Rasband, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Tracy C. Renner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Latrice Monique Black, appeals the judgment of conviction entered on jury verdicts finding her guilty of third degree assault, driving under the influence (DUI), and two counts of resisting arrest.  During deliberations, the jury asked the trial court, "What happens if we can't come to a unanimous decision on only one charge?"  Without further inquiry into whether the jury had reached an impasse and how intractable that impasse was, the trial court instructed the jury to continue deliberating.

¶ 2    We conclude that this was reversible error because instructing the jury to continue deliberating without any understanding of the intractability of the impasse risked coercing the jurors to reach a compromise verdict.  We therefore reverse Black's convictions and remand with directions.  In doing so, we conclude that the evidence was sufficient to support her (now reversed) third degree assault conviction, therefore permitting retrial on that charge.

## I.  Background

¶ 3    Police found Black in a Wal-Mart parking lot, asleep in the driver's seat of her car with the driver's side door open, near two empty fifteen milliliter bottles of whiskey (total combined volume of less than a shot).  The first officer to arrive, Officer Reder,

1

approached her and attempted to wake her by shaking her shoulder. After several shakes and repeated loud inquiries about whether she was okay, Black woke up. She was groggy and unintelligible at first, but after several minutes was able to converse with Officer Reder, paramedics, and other officers.

¶ 4    While several officers and paramedics were talking to Black, who was still seated in her car with the door open, Officer Williams went inside the Wal-Mart to view surveillance video of the parking lot. The video apparently showed Black's car entering the parking lot about an hour before Officer Reder arrived, parking, and not moving. The video apparently did not show Black leaving the car at any time.

¶ 5    After Officer Williams watched the video, he radioed to his fellow officers and indicated that Black should be arrested for DUI. The officers forcibly removed Black from her car, handcuffed her, and attempted to place her in the back of a police car. During this process, Black repeatedly exclaimed that she had not driven anywhere and had done nothing wrong. The officers managed to seat Black in the back of a police car with her hands cuffed behind her. But Black kept one leg extended, preventing the door from

closing.  As recounted in his trial testimony, Officer Williams "did a strike to her calf" in an attempt to inflict enough pain to cause her to move her leg and allow the door to close.  Eventually, the officers were able to close the door with Black inside.  But during this process, Black scratched the forearm of Officer Corey with her fingernails.  There was a very faint mark on Officer Corey's arm, but the skin did not break and it did not bleed.

¶ 6      Based on this scratch, the prosecution charged Black with second degree assault on a peace officer.  She was also charged with DUI, two counts of resisting arrest, and two counts of obstructing a peace officer.  The prosecution later dropped the two obstruction charges and Black was tried on the remaining charges.

¶ 7      At trial, the evidence included all of the officers' bodycam recordings.  But the prosecution neither introduced nor even collected the Wal-Mart surveillance video.  Instead, Officer Williams testified about what he had seen on the surveillance video.

¶ 8    After several hours of deliberation,[1] the jury sent the trial court its question: "What happens if we can't come to a unanimous decision on only one charge?"  Black requested that the trial court provide the modified-*Allen* instruction — "a supplemental jury instruction designed to encourage, but not coerce, a deadlocked jury into reaching a unanimous verdict." *Fain v. People*, 2014 CO 69, ¶ 2.  The trial court declined, stating that it did not read the jury's question to be "telling us they have come to an impasse."  Instead, the trial court simply instructed to the jury to "please continue with your deliberations at this time."  Approximately thirty minutes later, the jury returned verdicts on all charges.

¶ 9    The jury found Black guilty of third degree assault, a lesser included offense of second degree assault.  It also found her guilty of DUI and the two resisting counts.  The trial court convicted her accordingly.

---

[1] The record does not clearly reflect how long the jury deliberated. Instructions and closing arguments occurred just after lunch on November 16, and the jury deliberated until 5:00 p.m.  The court presented the jury's question to the parties at 12:45 p.m. the following day, though the record does not reflect what time deliberations began that morning.

¶ 10     At sentencing, the court expressed its desire to suspend Black's jail sentence for third degree assault but ruled that the relevant sentencing statutes prevented it from doing so.  The court therefore sentenced her to two years and one day in jail with work release for the assault conviction to run concurrently with shorter jail sentences for the other convictions.

¶ 11     Black appeals, arguing that (1) the evidence was insufficient to support her assault conviction; (2) the sentence imposed for the assault conviction was error; (3) the trial court erred by admitting Officer Williams's testimony about what he saw on the surveillance video without admitting the video itself; (4) the trial court erred by admitting expert testimony in the guise of lay testimony from one of the officers about how much alcohol Black had consumed; and (5) the trial court improperly instructed the jury to continue deliberating in response to the jury's question.

¶ 12     We agree with Black that the trial court erred by instructing the jury to continue deliberating without first determining whether it was at an impasse and, if so, how intractable that impasse was. We conclude that this error requires reversal of all her convictions. We therefore need not address her remaining arguments, save one.

If Black is correct that the evidence was insufficient to support her assault conviction, she cannot not be retried for it. *See People v. McCoy*, 2015 COA 76M, ¶ 29 (defendant may not be retried on a charge where the original conviction on that charge was supported by insufficient evidence), *aff'd on other grounds*, 2019 CO 44. We therefore address this argument and conclude that the evidence was sufficient, thus allowing retrial on the third degree assault charge.

## II. The Trial Court's Response to the Jury's Question

¶ 13 Black argues that the trial court's response to the jury's question during deliberations was improper. We review the trial court's response for an abuse of discretion. *See Fain*, ¶ 17.

¶ 14 If a trial court abuses its discretion by giving a coercive instruction to the jury, that error violates the defendant's constitutional rights to due process, an impartial jury, and a unanimous verdict. *See United States v. Zabriskie*, 415 F.3d 1139, 1148 (10th Cir. 2005). If such an error occurs, we must reverse unless the error is harmless beyond a reasonable doubt, meaning there is no reasonable possibility the error contributed to the conviction. *See Hagos v. People*, 2012 CO 63, ¶ 11.

¶ 15    We conclude that the trial court abused its discretion by instructing the jury to continue deliberating without first determining whether the jury was deadlocked and, if so, how intractably.  Because the trial court failed to make this threshold determination, we cannot rule out the possibility that the instruction was coercive.  And because it is possible that the instruction was coercive, we cannot say that the error was harmless beyond a reasonable doubt.  We must therefore reverse.

### A.  How to Respond to a Jury's Indication of Impasse

¶ 16    When responding to a jury question raising the possibility of an impasse during deliberations, a trial court cannot "give an instruction that expressly or impliedly coerces the jury to reach a verdict regardless of whether that would require a juror to 'surrender his conscientious convictions to secure an agreement.'" *People v. Munsey*, 232 P.3d 113, 119 (Colo. App. 2009) (quoting *Lowe v. People*, 175 Colo. 491, 494-96, 488 P.2d 559, 561-62 (1971)).  An instruction directing the jury to continue deliberating risks coercing jurors to abandon their conscientious convictions about the case for the sake of reaching a unanimous verdict.  *See People v. Schwartz*, 678 P.2d 1000, 1012 (Colo. 1984).

¶ 17    Whether an instruction is coercive "will necessarily depend on the content of the instruction and the context in which it is given." *Gibbons v. People*, 2014 CO 67, ¶ 30. If it is early in deliberations and the jury is making progress towards a verdict, an instruction to continue deliberating, even an unqualified one, carries little coercive risk. That same instruction, however, given to a jury that has been deliberating for longer and is making little or no progress towards a verdict, carries significant coercive risk. And the coercive risk is even greater if the unqualified instruction to continue deliberating is given to a hopelessly deadlocked jury that has been deliberating for days. Put simply, the coercive risk attached to any instruction to continue deliberating increases with the intractability and duration of the jury's impasse.

¶ 18    The trial court can mitigate some of this coercive risk by giving a modified-*Allen* instruction instead of an unqualified instruction to continue deliberating. The modified-*Allen* instruction provides:

> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching a verdict, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course

8

of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

COLJI-Crim. E:18 (2019).

¶ 19    So, what must the trial court do when the jury suggests it cannot agree on a verdict? First, the trial court must conduct a threshold inquiry: What is the likelihood of progress towards a unanimous verdict if deliberations continue? *See People v. Lewis*, 676 P.2d 682, 687 (Colo. 1984) ("[A]ny additional instruction directed towards averting a deadlocked jury should be preceded by an inquiry 'as to whether any progress has been made toward reaching an agreement and what the likelihood is for such future progress.'" (quoting *Lowe*, 175 Colo. at 495-96, 488 P.2d at 561)), *superseded by statute on other grounds as recognized in People v. Richardson*, 184 P.3d 755, 761-62 (Colo. 2008).

¶ 20    If progress is likely, there is no impasse and the trial court can give the jury an unqualified instruction to continue deliberating.[2]

¶ 21    If the trial court determines that progress is "unlikely," the court may, in its discretion, give a modified-*Allen* instruction. *Id.* at 689; *see Schwartz*, 678 P.2d at 1012. Although the fact that the jury is at something of an impasse increases the coercive risk of *any* instruction to continue deliberating, the modified-*Allen* instruction's prophylactic exhortations mitigate this risk.

¶ 22    But a modified-*Allen* instruction's prophylactics are not strong enough to sufficiently mitigate the most powerfully coercive circumstances. As our supreme court recognized in *Fain*, there is

---

[2] We note that, though the supreme court in *Lewis* stated that, in such a case, the trial court should "require further deliberation without any additional instruction," *People v. Lewis*, 676 P.2d 682, 689 (Colo. 1984), *abrogated by statute on other grounds as recognized in People v. Richardson*, 184 P.3d 755, 761-62 (Colo. 2008), we do not believe the supreme court meant that the trial court can say nothing to the jury upon determining there is no impasse. Surely jurors would be left confused if, in response to their inquiry about a possible impasse, the trial court brought them into the courtroom, asked if progress was still possible, and upon being told it was, the trial court simply walked off the bench without another word. We therefore read *Lewis* to say that upon learning that further progress is possible, the trial court should simply inform the jury that they may return to the jury room to continue deliberating.

"the potential that a modified-*Allen* instruction will coerce a hopelessly deadlocked jury into reaching a compromise verdict." *Fain*, ¶ 19. A modified-*Allen* instruction is therefore not always uncoercive. If it were, a trial court could give one repeatedly, day after day to a hopelessly deadlocked jury until it returned a verdict. Indeed, our supreme has declined to embrace a per se rule, instead indicating its "preference for a case-by-case approach when evaluating the coercive effect of a supplemental jury instruction." *Gibbons*, ¶ 29. So, if progress towards a verdict is not just unlikely but is impossible, even a modified-*Allen* instruction may be impermissibly coercive.

## B. The Trial Court's Response was Error

¶ 23 We cannot know, because the trial court failed to determine, whether progress towards a verdict was likely, unlikely, or impossible. The jury's question was open to interpretation. Was the question hypothetical? Or did the jury mean that it was truly deadlocked on one of the charges? The trial court's comments reflected the court's uncertainty. In discussing the jury's question with the parties, the trial court initially stated, "[m]y reading of this is they are not telling us they have come to impasse. My reading of

11

this is that they are asking me what happens if we can't come to a unanimous decision on only one charge." But the court went on to state, "I am not all that clear on this," and "we don't know what they mean by the question."

¶ 24 We do not envy the position of the trial court in having to interpret and respond to such an ambiguous question. But this ambiguity did not alleviate the trial court's duty to make the threshold inquiry — if anything, this ambiguity made the threshold inquiry even more critical. And because the trial court failed to conduct this inquiry, it is impossible for us to now divine the nature of the jury's impasse from the cold record. The best we can do is say that, based on the jury's question, progress towards a verdict may have been unlikely or impossible (though the latter is less plausible). If either was true, the court's unqualified instruction to continue deliberating was coercive. We therefore conclude that the trial court abused its discretion by failing to conduct the threshold inquiry into whether progress towards a verdict was likely if deliberations continued.

¶ 25 We recognize that in *Munsey,* another division of this court found no coercion and no error under circumstances similar to

ours. In that case, the jury's question during deliberations was, "[i]f the jury is hung on one or more counts, but has reached a verdict on the majority of counts, is it considered to be a hung jury for the entire case?" 232 P.3d at 119. The court responded, "It is your sworn duty to reach verdicts on all counts contained in the indictment." *Id.* The division held that the court's response was not coercive and not error because "the jury did not categorically state that it was unable to reach a verdict" and there was no "indication that further deliberations would not result in a verdict unless at least one juror voted in contravention of his or her true beliefs." *Id.* at 119-20.

¶ 26    In *Munsey*, as here, the trial court did not make an initial (or any) determination about whether further deliberations were likely to be productive. *Id.* The *Munsey* division seemed to hold that this oversight did not matter because there was no indication that further deliberations *would not* have been productive. But we think this interpretation contravenes the supreme court's directive in *Fain*, *Schwartz*, and *Lewis* — the *Munsey* division seems to have transformed the trial court's duty to determine to what extent the jury is deadlocked into a rebuttable presumption that it is not.

13

¶ 27    As explained above, this threshold determination is critical —

the coerciveness of an instruction often depends on the

intractability of the deadlock.  Consequently, the determination

should not be weighted by a presumption at the outset.  We

therefore respectfully disagree with *Munsey* and decline to follow it.

*See People v. Bondsteel*, 2015 COA 165, ¶ 14 (one division of this

court is not bound by the decision of another), *aff'd*, 2019 CO 26.

¶ 28    *Munsey* aside, other Colorado opinions have found no error in

cases where a trial court instructed the jury to continue

deliberating without making this threshold determination.  *See,*

*e.g., People v. Hayward*, 55 P.3d 803, 807-08 (Colo. App. 2002).

But we are unaware of any opinion analyzing whether a court's

failure to make this threshold determination before instructing it to

continue deliberating can render the instruction potentially coercive

and therefore error.  We think the absence of the threshold

determination can render an instruction error based on the

supreme court's more recent discussion of this issue in *Fain*.

¶ 29    In sum, when faced with a jury question that indicates the

possibility of an impasse, a trial court cannot simply tell the jury to

continue deliberating.  Before instructing the jury to continue its

deliberations, the trial court should determine whether further progress towards a unanimous verdict is likely. Optimally, this will entail bringing the jury into the courtroom, either collectively or juror by juror, and inquiring about the likelihood of progress.

¶ 30    Because the jury's question here suggested that it was at an impasse, the trial court abused its discretion by instructing the jury to continue deliberating without first ascertaining the intractability of that impasse.

### C. The Trial Court's Error Requires Reversal

¶ 31    We recognize that we cannot say that the instruction *was* coercive. All we can say is that it was *potentially* coercive. This uncertainty does not mitigate the trial court's error — on the contrary, it *is a direct result of* the trial court's error. The trial court's instruction was coercive if further progress was unlikely. But we cannot tell whether this was the case because the trial court failed to make that determination before giving the instruction.

¶ 32    As explained above, and as the trial court recognized, it was possible that the jury was at an impasse on one of the charges (which one, we don't know). The court responded by telling the jury, without qualification, to continue deliberating. If the

possibility of further progress was unlikely, the court's instruction may have coerced members of the jury to abandon their conscientious convictions for the sake of reaching a unanimous verdict. Because it is impossible for us to determine the intractability of the jury's impasse, we cannot say that the court's error was harmless beyond a reasonable doubt. *Cf. Germany v. People*, 198 Colo. 337, 340, 599 P.2d 904, 907 (1979) (Defendant's absence during deliberations and therefore inability to object to modified-*Allen* instruction was reversible because "[i]n the case of a modified *Allen* charge followed by a guilty verdict, it well could be that the defendant was prejudiced by the charge. No one can say what the jury might have done had not the instruction been given. Under these circumstances, obviously an appellate court cannot say, 'this was error but beyond any reasonable doubt it was harmless.'"). And because we cannot tell which charge was the subject of the impasse, we must reverse all of Black's convictions.

### III. Evidence was Sufficient to Support Black's Assault Conviction

¶ 33    As mentioned above, because we reverse all of Black's convictions, including her assault conviction, we address whether the evidence was sufficient to support the third degree assault

16

conviction only to determine whether Black may be retried on it. We conclude that the evidence was sufficient and the prosecution may retry her for third degree assault.

¶ 34    We review de novo whether the evidence was sufficient to support a conviction.  *See People v. Donald*, 2020 CO 24, ¶ 18.  In doing so, we view the evidence as a whole and in the light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence. *Id.* at ¶¶ 18-19.

¶ 35    Third degree assault requires that a person knowingly or recklessly cause another bodily injury.  § 18-3-204(1)(a), C.R.S. 2019.  The criminal code defines bodily injury as "physical pain, illness, or any impairment of physical or mental condition."  § 18-1-901(3)(c), C.R.S. 2019.  Our supreme court has interpreted this definition to mean that bodily injury is "at least some physical pain, illness or physical or mental impairment, however slight."  *People v. Hines*, 194 Colo. 284, 289, 572 P.2d 467, 470 (1977).

¶ 36    Officer Corey testified that Black scratched his arm while she was seated in the police car with her hands cuffed behind her. According to his testimony, Officer Corey had his left hand on

17

Black's right forearm. Officer Corey testified that with her other (left) hand, Black reached up and dug her nails into his left forearm for five to ten seconds. The officer testified that he did not notice it at first, but that when he did, it caused him pain and "was very uncomfortable." The bodycam videos are too dark to make out the events surrounding the scratch. And while the bodycam videos do include one officer yelling at Black not to try to bite him, they do not include any similar admonishment to stop scratching an officer.

¶ 37 As mentioned above, the evidence also includes photographs of Officer Corey's arm taken immediately after the incident. There is nothing in the record indicating that the scratches broke the skin or caused any bleeding. And the photographs show faint marks where Black scratched the officer's arm.

¶ 38 We may neither reweigh this evidence nor act as the thirteenth juror. *See People v. Poe*, 2012 COA 166, ¶ 14. Instead, we must credit Officer Corey's testimony and view it and the photographs of the injury in the light most favorable to the prosecution. We then take that view of the evidence and determine de novo whether it qualifies as bodily injury under our supreme court's interpretation of that term's definition in the statute.

¶ 39    Because (1) our supreme court has interpreted bodily injury to mean any "physical pain, illness or physical or mental impairment, however slight," *Hines*, 194 Colo. at 289, 572 P.2d at 470; and (2) we must view the evidence in the light most favorable to the prosecution, we must conclude that the evidence was sufficient to establish that Black caused Officer Corey bodily injury.  She may therefore be retried for third degree assault.

IV.  Conclusion

¶ 40    Black's convictions are reversed and the case is remanded for retrial.

JUDGE ROMÁN and JUDGE TOW concur.