**Garland Edward GOFF, Defendant-Appellant,**

v.

**The UNITED STATES of America, Plaintiff-Appellee.**

**No. 71–1011.**

United States Court of Appeals, Tenth Circuit.

Aug. 16, 1971.

Rehearing Denied Sept. 9, 1971.

Patrick Brogan, Oklahoma City, Okl., for appellant.

William R. Burkett, U. S. Atty., and John E. Green, Asst. U. S. Atty., Oklahoma City, Okl., for appellee.

Before SETH and BARRETT, Circuit Judges, and KERR, District Judge.

BARRETT, Circuit Judge.

Garland Edward Goff was tried by jury and found guilty of aiding and abetting other named inmates of the Federal Reformatory, El Reno, Oklahoma, in instigating, conniving, and wilfully attempting to cause and assist a riot and mutiny on April 27, 1968, in violation of 18 U.S.C. §§ 2, 1792.

On appeal Goff claims that the trial court erred in (a) denying his Motion for Directed Verdict; (b) giving the "Allen" type instruction to the jury accompanied by time limit for further deliberation; (c) admitting certain evidence over objections; and (d) denying his Motion to Dismiss Indictment and Motion to Quash Indictment.

The case was before this court once before. United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969). There Goff's appeal was consolidated with that of other inmates similarly charged arising out of the prison disturbance. This court reversed Goff's conviction on the ground that "the indictments do not allege that anyone instigated or connived to cause a riot." The Government contended that the statute under which Goff was charged there—as he is here —is satisfied by proof of participation in the riot by the accused.

■ Goff contends that the court erred in overruling his Motion for Directed Verdict. The Motion challenged the sufficiency of the Government's evidence. In considering a motion for acquittal the trial judge must apply the same test applicable to appellate review following conviction; that is, whether the evidence viewed in the light most favorable to the Government is sufficient to justify a jury verdict of guilt beyond a reasonable doubt. Lewis v. United States, 420 F.2d 1089 (10th Cir. 1970); Mason v. United Slates, 408 F.2d 903 (10th Cir. 1969), cert. denied 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); Mares v. United States, 409 F. 2d 1083 (10th Cir. 1968), cert. denied 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d

564 (1969); Speers v. United States, 387 F.2d 698 (10th Cir. 1967), cert. denied, 391 U.S. 934, 88 S.Ct. 1844, 20 L.Ed.2d 853 (1968).

When this case was here before in United States v. Rodgers, *supra*, we said that a person cannot be guilty of aiding and abetting in the instigation of a riot by proof only of participation therein. Further, we held that there must be evidence that someone (a principal or principals) committed the crime. We hold that the Government's proof in the case at bar met these tests and that the court properly denied the Motion for Directed Verdict.

Certain inmates, including Hawk and Moccasin, named in the indictment, were principals. The disorder involved an inmate named Robinson, alleged to be a sexual deviant. Late in the afternoon on April 27, 1968, Robinson ran from the hospital corridor into a group of about 25 Black inmates gathered at Dormitory 2. Robinson told the Black inmates that prison officers had hit him and called him names. There was evidence that Robinson had been on very friendly terms with some Indian inmates. Two officers entered the group of Black inmates, took Robinson into custody and delivered him to the disciplinary unit. Shortly before 5:00 p. m. that day a group of 5 or 6 Black and Indian inmates attacked Officer Goodman. Shortly after this attack, appellant Goff was seen by Officer Zweiacker with this group. The cause of the riot was hostility of certain Black and Indian inmates against prison authorities for confining Robinson and for the alleged mistreatment of Robinson. The record is clear that Goff had previously associated closely with some of the Indian inmates.

Following the attack on Officer Goodman, the group of approximately 25 Black and Indian inmates proceeded to the prison compound. Recall had been sounded directing all inmates to return to their assigned quarters. Goff was with this group on the compound. Instead of obeying the recall order, this group, together with many other inmates who had then gathered on the compound, proceeded to surround several unarmed officers. Some of the inmates —particularly certain Black and Indian inmates—were armed with baseball bats, golf clubs and horseshoes. The officers entreated them to return to their quarters. Goff shouted vulgarities to the officers and encouraged the inmates to violate the recall order and remain in a group. The main troublemakers in the group were Black and Indian inmates.

When Officer Benefiel joined the other officers on the compound, Goff remarked "Well this is Mr. Benefiel, he's all right, but when things happen we are going to get him too." Later Goff attempted to strike Benefiel. They grappled briefly before Goff ran away. Officer William E. Brookshire, who had previously been on good terms with Goff, was surprised to see Goff with some of the Indian inmates confronting Officer Zweiacker. He asked Goff what he was doing there. Goff replied, "If you don't want to get hurt, Mr. Brookshire, you should leave because we are going to hurt some officers today." He heard Goff tell other inmates that they would be cowards if they obeyed the recall signal. Goff encouraged the inmates to attack the officers.

A number of officers were injured, one seriously. The property damage to the institution was estimated at $10,-000.00. Goff was finally removed from the scene after tear gas was employed by the officers in Dormitory 6. Goff was not assigned to this Dormitory. A large amount of damage was done inside and many weapons were recovered there.

Goff was seen with the original group of discontented Blacks and Indians immediately following the first disorder— the attack on Officer Goodman. His previous friendship and association with certain Indian inmates, coupled with his presence then with the principals in the riot, the vulgarities he thereafter uttered to the prison officers, and his remarks made to Officer Brookshire that "we are going to hurt some officers to-

day", were facts from which a reasonable inference could be drawn that Goff had aided and abetted other named inmates to instigate and cause a riot. This court has held that such intent may be established by circumstantial evidence, upon which reasonable inferences may be drawn. Swallow v. United States, 307 F.2d 81 (10th Cir. 1962). Here we have both direct and circumstantial evidence which, coupled with reasonable inferences to be drawn therefrom, was sufficient to justify the jury's verdict of Goff's guilt to the crime charged beyond a reasonable doubt. The Court properly denied the motion for directed verdict.

Goff claims that the trial court erred while submitting the "Allen" type charge to the jury. We agree. The jury retired at 1:42 p. m. following summation arguments and court instructions. At 5:05 p. m. the jury was returned by the judge to the courtroom. The judge asked the foreman whether he believed that a unanimous verdict could be reached if the jury deliberated a little longer that day. The foreman replied that he did not believe that a decision could be reached that night. The following day was Veterans Day. The Court declared a recess until 9:00 a. m. the day subsequent to Veterans Day. At 11:55 a. m. the judge returned the jury to the courtroom after receiving this message from the foreman: "We believe that we have reached the point that we cannot come to a decision." Thereupon the Court gave the "Allen" charge.

 This court has approved the "Allen" type instruction under circumstances of an apparent deadlocked jury, providing that the court carefully avoid any indicia of partiality or coercion. Burroughs v. United States, 365 F.2d 431 (10th Cir. 1966); Elbel v. United States, 364 F.2d 127 (10th Cir. 1966), cert. denied 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550 (1967). An instruction to the jurors that they should deliberate together in an atmosphere of mutual respect and understanding, carefully avoiding any indication that they should

forfeit conscientiously held convictions, whether by original or supplemental instruction, is a matter properly within the discretion of the trial judge. We find no fault with the main charge given in this case.

However, the Court added the following admonishment to the jury: "If you cannot (reach a verdict) within, oh, we'll say the next hour or so and probably ought to go to lunch first, then, we'll have to declare a mistrial and set the case down for hearing again." Defense counsel objected to all of the supplemental instructions. The jury returned a guilty verdict at 1:25 p. m. It was impermissibly suggestive and coercive for the Court to place a time fuse on the period of jury deliberation. Such constitutes reversible error. Burroughs v. United States, *supra.*

In *Burroughs,* the Court told the jury that "we have been here quite a while but I should like for you to organize and see if you can't reach a verdict within an hour. If you can't, and on request of the jurors, we can do something about it, but let's work for about another hour, will you please?" The jury was returned in about an hour. It was still deadlocked. The Court returned the jury for further deliberation at about 6:25 p. m. advising that it should deliberate until 7:00 p. m. and if they could not then arrive at a verdict they would be recessed until the following morning at which time further deliberations would be had. The court must avoid any indicia of coercion. See Annot., 93 A.L.R.2d 627 (1964); United States v. Diamond, 430 F.2d 688 (5th Cir. 1970); Brandom v. United States, 431 F.2d 1391 (7th Cir. 1970), cert. denied 401 U.S. 942, 91 S.Ct. 950, 28 L.Ed.2d 223 (1971).

 Appellant claims further error in that the judge, in conjunction with the supplemental "Allen" type instruction, informed the jury that, under the definition of "riot" submitted and the evidence heard, that they need not conclude that there was only one riot. The Court observed that a number of disor-

ders had broken out at different points in the prison and at different times, indicating that each separate disorder may have met the definition of "riot". Appellant cites no authorities in support of his argument. We, accordingly, decline to consider this issue.

We find no merit in Goff's claim that the Court erred in allowing certain evidence over objections. Goff contends that testimony given by various witnesses who were serving as prison officials at El Reno during the riot, was "incompetent, immaterial, irrelevant and highly prejudicial." The evidence complained of related to damage to property, injuries to guards, and general testimony concerning the riotous events. The testimony of Officers Cox, Brookshire, Benefiel and Ellison concerned Goff's prior associations, his actions and statements during his involvement in the various disturbances and his identity to the principals.

This court, in United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969), *supra*, held that one cannot be guilty of aiding and abetting in the commission of a crime until it has been established that someone has committed that crime. The evidence complained of was properly admitted in keeping with that mandate. Instruction No. 4 defined a "riot" as any use of force or violence, or any threat to use force and violence if accompanied by immediate power of execution by three or more persons acting together and without authority of law. It likewise defined "mutiny" as the rising against, or resisting lawful or constituted authority. No objection was lodged to this instruction. The evidence complained of was admissible as proof of the commission of the crime of riot.

Goff alleges that the court erred in denying his Motion to Dismiss and Motion to Quash Indictment. He relies on Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), for his contention that he was subjected to double jeopardy in violation of his Fifth Amendment guarantee. In that case, Ashe had been previously tried on the charge of armed robbery of one of six poker player participants. The State failed to convince the jury that Ashe had been one of the robbers. He was found not guilty. Ashe was thereafter prosecuted for the armed robbery of another participant in the same poker game. The Court held that the subsequent prosecution was barred in that the ultimate issue of fact had been fully litigated in the first trial.

The doctrine of collateral estoppel which was applied in the *Ashe* case is not applicable here. Goff's prior conviction was reversed by this court because the "indictments do not allege that anyone instigated or connived to cause a riot. There is no allegation that anyone instigated or caused the riot." United States v. Rodgers, *supra*, 419 F.2d at 1317. It is well established that double jeopardy does not apply to a conviction set aside based upon error in the proceedings leading to conviction. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed 300 (1896); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Tipton v. Baker, 432 F.2d 245 (10th Cir. 1970).

The conviction is reversed for the reason that the Court's admonishment to the jury given in conjunction with the otherwise permissible "Allen" charge coerced the jury by fixing a specific time limit within which the jury was to return a verdict before the Court declared a mistrial.

Reversed and remanded.