**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence BEY and Willie Cruso Free,
Defendants-Appellants.**

No. 80–7608.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Feb. 1, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

**8**

Jerry Rylee (Court-Appointed), Michael A. Kessler, Atlanta, Ga., for Bey.

William R. Gignilliat, Atlanta, Ga. (Court-Appointed), for Free.

Steven R. Wisebram, Julie E. Carnes, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

---

** Honorable Edward S. Smith, Judge for the U.S. Court of Claims, sitting by designation.

Before HILL, Circuit Judge, SMITH **, Judge, and HENDERSON, Circuit Judge.

SMITH, Judge:

Lawrence Bey and Willie Cruso Free were each convicted of one count of mutiny and two counts of assault on a federal officer, in violation of 18 U.S.C. § 1792 (1976) and 18 U.S.C. § 111 (1976), respectively, arising out of an altercation between the defendants and corrections officers during their confinement in the United States Penitentiary at Atlanta, Georgia. Defendants claim that their conduct did not, as a matter of law, constitute mutiny, and that the trial judge erred in refusing to adopt two of defendants' requests to charge, in using the form he used for the jury's verdict, and in permitting the jury to consider the lesser included offense of simple assault when the indictment charged assault with a dangerous weapon. We find defendants' contentions to be without merit and accordingly we sustain the convictions.

Briefly, the facts are these. At about 9:30 a. m. on October 24, 1979, officers of the Atlanta penitentiary were called to investigate a report of water being dumped from a mop bucket onto the floor of cell 11, in which three men were confined.[1] Defendants, who had been scrubbing the cell, refused to surrender the mop and bucket when ordered to do so by a corrections officer. The officer then left the scene at least once to give defendants a chance to cool down and cooperate, in an attempt to avoid the kind of disturbance which in fact occurred. When it became clear that defendants would not cooperate, other officers were summoned to the scene. Defendants continued their refusal and added threats of bodily harm to the officers and of a prison uprising.

This altercation was accompanied by much shouting and, while the evidence is sketchy, it seems clear that other inmates

---

1. The third inmate did not take part in the incident here and was not charged in connection with it.

joined in the general commotion, though all of them were confined to their cells throughout the events of the morning. At the height of the fracas several corrections officers were on hand to control any general uprising.

Upon further demand for the mop and bucket, defendants barricaded the door of their cell with the beds in the cell, broke the mop handle, and armed themselves with the broken pieces. One officer, Bernard Loomis, forced his way past the beds into the cell, but slipped on the wet floor. Defendants struck him with the mop handles and took his riot stick and can of mace. Loomis retreated. Finally, the guards succeeded, by using tear gas, in forcing defendants to abandon the cell; however, one officer, Nelson Negron, was struck on the arm while introducing tear gas into the cell.

1. Defendants contend that mutiny involves the participation and incitement of other inmates and that since this was not present the Government has failed to charge or prove facts sufficient to constitute a violation of 18 U.S.C. § 1792. The Government stresses the dangerous situation presented by a prison disturbance.

There is very little direct authority on the meaning of "mutiny" in section 1792. Indeed, the parties' and our researches have yielded only one case directly on point.[2] *United States v. Bryson*, 423 F.2d 724 (4th Cir. 1970), approved an instruction which gave a very broad definition of mutiny: " ' * * * the inmates resisting the warden or his subordinate officers in the free and lawful exercise of their legal authority.' " *Id.*, 423 F.2d at 724–25. This formulation was the basis of the district court's charge to the jury in the present case.

The *Bryson* case, however, is not the strongest authority. First, it did not adopt the definition as its own but only found it acceptable. Second, it applied that definition on the basis of a case totally inapposite to the situation in *Bryson* or in the instant case. The case relied upon, *Hamilton v. United States*, 268 F. 15 (4th Cir.), *cert. denied*, 254 U.S. 645, 41 S.Ct. 15, 65 L.Ed. 454 (1920), involved a different statute, which prohibited mutiny on a ship, and applied it to concerted resistance by the ship's entire crew.

We are also reluctant to follow the *Bryson* formulation because, as defendants point out, its definition could be extended to any number of minor infractions of prison discipline, regardless of the circumstances. In this connection it is useful to note that section 1792 has not been applied to a situation as limited in scope as this one.[3] Furthermore, some courts have used mutiny and riot interchangeably (a not inconceivable construction of section 1792), and riot is conventionally defined as involving three or more persons. *See Goff v. United States*, 446 F.2d 623, 627 (10th Cir. 1971); *United States v. Evans*, 542 F.2d 805, 818 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977). Yet it is also clear that mutiny, and certainly incitement to mutiny, can occur without tumult, which would seem to be a necessary ingredient of a riot.

■ Notwithstanding our hesitation about *Bryson*, we affirm the defendants' conviction for mutiny. Resistance to lawful authority is the heart of a charge of mutiny, and that was amply proven here. This does not mean that every disciplinary violation is a federal felony. We emphasize the aggravating factors in this case: the barricading of the door, the collaboration of the

---

2. The cases principally relied upon by the parties discuss the extent of participation necessary to violate § 1792.

3. Serious revolts were involved in *United States v. Bryant*, 563 F.2d 1227 (5th Cir. 1977), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1616, 56 L.Ed.2d 65 (1978); *United States v. Evans*, 542 F.2d 805 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977);

*United States v. Farries*, 459 F.2d 1057 (3d Cir. 1972), *cert. denied*, 409 U.S. 888, 93 S.Ct. 143, 34 L.Ed.2d 145, 410 U.S. 912, 93 S.Ct. 975, 35 L.Ed.2d 275 (1973); and *Goff v. United States*, 446 F.2d 623 (10th Cir. 1971). The facts of *Bryson* itself are not reported, but the sketchy reference to an "outbreak" suggests something more serious than what happened in the instant case.

two inmates, the assaults on prison officials, the fashioning of weapons, the taking of a weapon and a can of mace from an officer, the amount of force required to quell the disturbance, and especially their attempts (albeit quite futile) to arouse other inmates to action, and the potential for more serious troubles found in disturbances of this magnitude.

In short, section 1792 would not properly have been applied in this case had the defendants merely made verbal threats and refused for a time to turn over the cleaning implements; nor, for example, would the third cellmate who simply refused to leave the cell be, by himself, guilty of mutiny. It is the substantial, determined, and in this case violent rebellion against the lawful orders of the officers which constitutes the gravamen of mutiny, and that was alleged and proved by the Government and found by the jury.

2. Defendant Bey (but not Free) assigns as error the trial judge's refusal to give two of defendant's proposed instructions. Request to Charge No. 3 cautioned the jury not to convict the defendant on the basis of any conduct not alleged in the indictment. Number 11 emphasized that the Government must meet its heavy burden of proof on the basis only of the evidence presented in this case. The purposes of these instructions were to overcome the prejudice inherent in defendant's being a prisoner and to be sure that the jury did not convict him on the basis of prior crimes.

■ These purposes, while arguably significant, were not mentioned by defendant when he objected to the instructions. He merely objected to "the Court's not giving defendant's request of charge number one, two, three, 11 and 17." The Federal Rules of Criminal Procedure require that a party's objections to the charge must "stat[e] distinctly the matter to which he objects and the grounds of his objection." Fed.R. Crim.P. 30. This circuit has long required a precise statement of the grounds of the objection, and none such is found here.

*Tomley v. United States*, 250 F.2d 549, 550–51 (5th Cir. 1957), *cert. denied*, 356 U.S. 928, 78 S.Ct. 716, 2 L.Ed. 759 (1958). A general objection to the trial judge's refusal to adopt defendant's requests will not satisfy Rule 30. *Maxfield v. United States*, 360 F.2d 97, 99 (10th Cir.), *cert. denied*, 385 U.S. 830, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966).

■ The objection not having been properly presented under Rule 30, the court will still consider the objection under Rule 52(b) if it constitutes plain error. *United States v. McCracken*, 488 F.2d 406, 413 (5th Cir. 1974). We have examined the charge and the requests and note that the substance of the requests were in the charge. It is not plain error to refuse to adopt defendant's specific wording, *id.* at 421; the charge was fair, accurate, and impartial. We therefore hold that the trial judge's refusals to adopt Requests to Charge Nos. 3 and 11 did not constitute "[p]lain errors or defects affecting substantial rights," if indeed they constituted errors at all. Fed.R.Crim.P. 52(b).

3. Both defendants object to the form of the verdict. They argue that the form the jury was to fill out was suggestive of a guilty verdict. Timely and specific objections were made at trial.

The verdict forms read:

### VERDICT

As to Count I, we the Jury find the defendant, [name of defendant], _____ of mutiny.

As to Count II, we the Jury find the defendant, [name of defendant], _____ of forcibly assaulting Bernard Loomis, an employee of the United States Penal Institution, while he was engaged in the performance of his official duties

  with a dangerous weapon

  without the use of a dangerous weapon.

As to Count III, we the Jury find the defendant, [name of defendant], _____ of forcibly assaulting Nelson Negron, an employee of the United States Penal In-

stitution, while he was engaged in the performance of his official duties

with a dangerous weapon

without the use of a dangerous weapon. The jury was to fill in "guilty" or "not guilty" in the blanks and to cross out the inapplicable final clause on Counts II and III.

■ Having reviewed the forms in question, we do not find them suggestive of any verdict. The sentences read well with either result, and, while they describe the offenses in more detail than simply "Count I" or "Count II," the descriptions are considerably less graphic than those in the indictment, which the jury also had before it and which a "Count I," "Count II" construction would necessarily have led the jury to consult. In short, we agree with the trial judge that the benefits of the form in terms of clarity outweigh any possible prejudicial effect.

4. The defendants' final assignment of error is the trial court's placing before the jury the possibility of finding simple assault, the lesser included offense of assault with a dangerous weapon. Since simple assault carries a less severe penalty than that with which defendants were originally charged, defendants' objection is presumably based on their belief that, given an all-or-nothing proposition (guilty of assault with a dangerous weapon or not guilty of any assault), the jury might well have acquitted. Instead, the defendants claim the jury was permitted to reach a compromise that was not supported by the evidence.

If the lesser included offense was supportable by the evidence, then the defendants have no ground for objection under Rule 31(c). *Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *United States v. Methvin*, 441 F.2d 584, 585–86 (5th Cir.), *cert. denied*, 404 U.S. 839, 92 S.Ct. 130, 30 L.Ed.2d 72 (1971); *Yates v. United States*, 384 F.2d 586, 588 (5th Cir. 1967). So, defendants argue that the mop handle was necessarily a dangerous weapon and there-

fore, according to the evidence submitted, the jury could only find either that defendants assaulted the officers by means of a dangerous weapon ("all") or that they committed no assault ("nothing").

The Government contends that the jury could rationally have reached the conclusion it did because they believed either that no mop handles were used or that the mop handles were not dangerous weapons.

■ As to the first possibility, the third, non-participating inmate testified that he saw no mop handles, and the jury could well have credited that testimony. As to the second, what constitutes a dangerous weapon depends not on the nature of the object itself but on its capacity, given the manner of its use, to " ' * * * endanger life or inflict great bodily harm.' " *United States v. Johnson*, 324 F.2d 264, 266 (4th Cir. 1963). Factors relevant to this determination include the circumstances under which the object is used and the size and condition of the assaulting and assaulted persons. A dangerous weapon is an object capable of doing serious damage to the victim of the assault; the jury could reasonably have found that the mop handles were not under the circumstances dangerous weapons. Therefore, the instruction on the lesser included offense was proper.

The court finds no error on the part of the district judge. Accordingly, the convictions are

AFFIRMED.