23CA0341 Peo v Fletcher 12-24-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA0341
Mesa County District Court No. 22CR187
Honorable Gretchen B. Larson, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dwight Jay Fletcher,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

_____

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney
General and Assistant Solicitor General, Zoë Kirchoff, Assistant Attorney
General Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant-Appellant, Dwight Jay Fletcher, appeals his convictions of driving under the influence, driving under restraint — alcohol related, possession of a controlled substance, possession of drug paraphernalia, reckless driving, failure to display headlamps, and lane usage violation.  We affirm the judgment of conviction.

## I.    Background

¶ 2    On December 11, 2021, police officers responded to a report that a car had crashed into a light pole.  Witnesses reported seeing a man get out of the driver's seat and flee the scene.  Shortly after arriving at the scene, Sergeant Steele[1] and Officer David Keech made contact with a person matching a description of the person who fled the scene.  This person was Fletcher.

¶ 3    Fletcher admitted to owning the car and to drinking that day.  Fletcher claimed, however, that he wasn't driving the car when it crashed but couldn't provide much information about the alleged driver.  A witness told the police that she was "80% sure" that

---

[1] The record doesn't reveal Sergeant Steele's first name.

Fletcher was the driver who had fled the scene. Fletcher was arrested one street away from where the accident had occurred.

¶ 4 Fletcher was charged with two drug crimes, two alcohol-related driving offenses, and numerous moving violations. One of the charges was felony driving under the influence (DUI) in violation of section 42-4-1301(1)(a), C.R.S. 2025. "[DUI] is a misdemeanor, but it is a class 4 felony if the violation occurred after three or more prior convictions, arising out of separate and distinct criminal episodes, for DUI, DUI per se, or [driving while ability impaired (DWAI)]." *Id.*

¶ 5 Ahead of trial, Fletcher filed a motion requesting a bifurcated trial for the prior conviction element of the felony DUI charge. The trial court denied his motion, citing case law disallowing bifurcation when the prior convictions are an element of the charged offense.

¶ 6 Trial was held over four days in November 2022. At trial, Fletcher argued that he wasn't the driver of the car. To establish that Fletcher had three or more previous DUI convictions, the prosecution admitted five certified court records of DUI convictions and a Division of Motor Vehicles (DMV) record — all belonging to a Dwight Jay Fletcher.

2

¶ 7 The prosecution rested on the third day of trial and Fletcher filed a motion for judgment of acquittal. Fletcher argued that the prosecution had failed to meet its burden of proof, beyond a reasonable doubt, that Fletcher had three or more previous DUI convictions. Specifically, Fletcher argued that the prosecution failed to admit sufficient evidence to establish an essential link between him and the prior convictions. The trial court said it was "an extremely close case" but denied Fletcher's motion, finding that self-certifying court documents and the DMV record admitted into evidence provided sufficient evidence to establish the essential link between Fletcher and the prior convictions.

¶ 8 The defense rested on the fourth day of trial, and the jury started deliberating. After seven hours of deliberation, and a jury question about how to proceed if they couldn't reach a unanimous verdict, the trial court gave the jury a modified-*Allen* instruction, which is "a supplemental jury instruction designed to encourage, but not coerce, a deadlocked jury into reaching a unanimous verdict." *Fain v. People*, 2014 CO 69, ¶ 2 (citing *Allen v. People*, 660 P.2d 896 (Colo. 1983)).

¶ 9    After further deliberations, the jury was dismissed late in the evening. The jury returned after a three-day holiday weekend. After an additional thirty minutes of deliberation, the jury found Fletcher guilty on all counts.

## II.    Analysis

¶ 10    Fletcher raises three issues on appeal. First, he contends that the prosecution failed to prove beyond a reasonable doubt that he had three or more previous convictions, an essential element of felony DUI. Second, he contends that the trial court coerced the jury's guilty verdict by giving them improper instructions. Third, he contends that the trial court erred when it denied his motion to bifurcate the trial. For the reasons set forth below, we reject all three contentions and, therefore, affirm.

### A.    Sufficiency of Prior Conviction Evidence

¶ 11    Fletcher first contends that the prosecution didn't present sufficient evidence to prove, beyond a reasonable doubt, his identity as the perpetrator of the underlying previous DUI convictions. We disagree.

### 1. Additional Facts

¶ 12    At trial, the prosecution admitted a certified DMV record for a "Dwight Jay Fletcher," with a birthdate of July 1, 1965. The DMV records custodian averred in a records affidavit that a search of DMV records "revealed that this is the only subject with this name and date of birth." The DMV record also included a physical description — based on applicant-provided information submitted to the DMV for a driver's license issued in 2017. The physical description included the subject's sex (male), height (5′11″), weight (165 pounds), hair color (brown), and eye color (hazel). Lastly, the DMV record listed three DUI convictions:

(1)    a January 23, 2002, conviction for driving a vehicle while under the influence of alcohol or drugs in Mesa County, Colorado;

(2)    October 17, 2002, convictions for driving under restraint — alcohol related offense and driving a vehicle while under the influence of alcohol or drugs in Mesa County, Colorado; and

(3)    a March 1, 2004, conviction for driving under the influence of alcohol or drugs in Mesa County, Colorado.

¶ 13    The prosecution also introduced into evidence five self-authenticating court records of DUI convictions for a "Dwight Jay Fletcher," with a birthdate of July 1, 1965.[2]  Two of the five admitted certified court documents described offenses that occurred in Washington state, while the remaining three detailed offenses that occurred in Mesa County, Colorado.  Among other moving violations, the Mesa County court documents included the following convictions:

(1)    January 23, 2002, convictions for DUI and DUI per se;

(2)    October 17, 2002, convictions for DUI and driving under restraint — alcohol related offense; and

(3)    March 1, 2004, convictions for DUI and DUI per se.

¶ 14    Additionally, Officer Keech identified Fletcher during his trial testimony.  Officer Keech described Fletcher as "[t]he gentleman with the gray hair [and] gray beard sitting at the Defendant's table[;] his appearance has changed dramatically from 11 months ago, but the features are still the same.  It's still Mr. Fletcher."

---

[2] One of the Washington state court records didn't include a date of birth but instead listed the subject's age as forty-seven on January 18, 2013.  This age on that date aligns with a birthdate in 1965.

### 2. Standard of Review and Applicable Law

¶ 15 We review the record de novo to determine whether the evidence presented by the prosecution was sufficient in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We employ a "substantial evidence test," *id.*, where we ask if the evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)). It doesn't matter if we would have reached a different conclusion as the trier of fact; we must "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." *Gorostieta v. People*, 2022 CO 41, ¶ 17 (quoting *People v. Harrison*, 2020 CO 57, ¶ 32); *accord People v. Perez*, 2016 CO 12, ¶ 25.

¶ 16 To convict a defendant of felony DUI, the prosecution must prove, among other elements, that the defendant has "three or more prior convictions, arising out of separate and distinct criminal episodes, for DUI, DUI per se, or DWAI." § 42-4-1301(1)(a).

7

> [I]n order for the prosecution to prove a defendant's identity in such a case, the prosecution must establish an essential link between the prior conviction and the defendant. This, in turn, requires the prosecution to present some documentary evidence combined with specific corroborating evidence of identification connecting the defendant to the prior felony conviction.

*Gorostieta,* ¶ 2.

¶ 17    Simply sharing the "same name and date of birth, *without more*, will generally be insufficient" to establish this essential link between a defendant and a prior conviction. *Id.* at ¶ 28. In *Gorostieta,* the supreme court provided a nonexhaustive list of acceptable corroborating evidence:

> (1) evidence specifically identifying the defendant; (2) unique identifiers such as a driver license, prison identification number, or social security number; (3) photographs or fingerprints from the prior case that link that case to the current defendant; (4) a physical description from the prior case that can be compared to the defendant in the present case; (5) distinguishable features of the defendant such as tattoos; or (6) testimony of probation officers or others with personal knowledge positively identifying the defendant as being the same person who had previously been convicted.

*Id.* at ¶ 27.

¶ 18    In *Gorostieta,* the prosecution introduced evidence of the defendant's name and date of birth.  *Id.* at ¶ 30.  The prosecution also admitted self-authenticating court records of the prior convictions.  *Id.*  The court records contained a physical description of the defendant (height, weight, eye color, hair color, and ethnicity), which the court said the "jury would have been able to compare to Gorostieta's appearance at trial."  *Id.*  Further, the prior convictions occurred in the same county as the case being tried.  *Id.*

¶ 19    The *Gorostieta* court noted that the prosecution could have easily introduced photos, fingerprints, unique identifiers, or witnesses with knowledge of the defendant from the previous convictions, but it didn't.  *Id.* at ¶ 31.  Notwithstanding this shortcoming, the court concluded that while the evidence was "perhaps thin, the prosecution produced sufficient documentary evidence combined with specific corroborating evidence to establish the requisite essential link between the prior conviction and Gorostieta."  *Id.* at ¶ 32.

¶ 20    The evidence admitted against Fletcher matches the admitted evidence in *Gorostieta.*  Here, the prosecution introduced self-

authenticating court records of three prior DUI convictions, all for an individual with the same name and date of birth as Fletcher. The three Mesa County convictions occurred in the same county as the present case, "which arguably made it less likely that the defendant in the prior case was a different person." *Id.* at ¶ 30. The prosecution also introduced a DMV record that matched Fletcher's name and date of birth and included a physical description which the jury could have compared to Fletcher's appearance at trial. *Id.*

¶ 21 Fletcher argues that his appearance at trial didn't match the description in the DMV record. Fletcher cites Officer Keech's trial testimony describing Fletcher as "[t]he gentleman with the *gray* hair [and] *gray* beard," (emphasis added), while the DMV records identified him as having brown hair. Hair color, however, is a changing and readily changeable characteristic. The rest of Officer Keech's testimony identifying Fletcher exemplifies this, noting that Fletcher's appearance had changed in the last eleven months, but he was still able to identify Fletcher as the person he had arrested. Given the testimony at trial, it was up to the jury to determine if the discrepancy in hair color between the five-year-old DMV record and

Fletcher's appearance at trial was sufficient to raise a reasonable doubt. *See Clark*, 232 P.3d at 1291.

¶ 22    Additionally, the prosecution here admitted evidence beyond the evidence that established an essential link in *Gorostieta*. The DMV record here included a note from the records custodian that this was the only record in the DMV's system for a subject with that name and date of birth. Further, all the sentencing dates in the Mesa County court documents aligned with the sentencing dates of DUI convictions in the DMV record.

¶ 23    To summarize, through the self-authenticating court records and DMV record, we have three convictions tied to Fletcher — the requisite number of convictions for felony DUI. When taken together and giving the prosecution the benefit of every reasonable inference, the jury could have reasonably inferred from this evidence that this Fletcher is the same Fletcher who had been convicted of three prior DUI-related offenses. Accordingly, we conclude that the prosecution submitted sufficient and substantial evidence to prove Fletcher was the person who committed the three previous Colorado DUI-related convictions. *See Clark*, 232 P.3d at 1291.

¶ 24    Fletcher next contends that the trial court gave the jury improper coercive instructions after the jury expressed that it was struggling to reach a unanimous verdict.  He contends that the trial court erred by failing to explicitly inquire into the likelihood of progress toward a unanimous verdict upon further deliberations before giving the jury a modified-*Allen* instruction.  He further contends that communications between the trial court and the jury — including the modified-*Allen* instruction and communications after the modified-*Allen* instruction — coerced the jury into reaching a unanimous verdict.  Fletcher argues the coercion is evidenced by the amount of time it took the jury to reach a unanimous verdict after returning from a holiday weekend.  We disagree.

1.    Additional Facts

¶ 25    On the fourth day of trial and after seven hours of deliberation, the jury submitted the following note to the trial court[3]:

---

[3] Deliberations began at 9:45 a.m. and the jury's note came at 5:04 p.m.

12

> We aren't sure how to proceed. We are in agreement on counts 7 & 8. We are however hung on if he, Fletcher, was the driver. 11 of the 12 believe he was the driver and think him guilty of charges 1, 2, 3, 5, & 6. How should we proceed?
>
> (The one [holdout juror] is not "100%" sure he was the driver and thinks there could have been another person.)

¶ 26    The trial court indicated it was deciding between giving the jury a modified-*Allen* instruction or releasing the jury for the weekend, as the following day was a court holiday. Defense counsel objected to the modified-*Allen* instruction, explaining:

> Judge, we're objecting to the modified[-]*Allen* instruction being read to the jury. There's a substantial risk here of a coerced verdict. This communication from the jury explains a lot . . . about what's going on. And I think that the way that this question is phrased, there's a substantial risk that this one person that doesn't agree that the Prosecution's met its burden is going to feel coerced into agreeing just to make this process move along.
>
> So, I think that a modified[-]*Allen* instruction would violate Mr. Fletcher's right to a fair trial and to due process under both the Colorado and Federal Constitution[s].

¶ 27    Fletcher's counsel didn't object to the trial court giving the modified-*Allen* instruction without first inquiring into the likelihood of progress toward a unanimous verdict upon further deliberations.

13

Fletcher's counsel also noted that the holiday weekend would create three days of separation between the jury and the evidence, but the trial court stated it wasn't considering that detail.

¶ 28　　The trial court decided to give the jury the following modified-*Allen* instruction:

> The [trial court] is going to suggest a few thoughts that you should consider in your deliberations, along with the evidence in the case and all of the instructions previously given. It is your duty as jurors to consult with one another and to deliberate with a view to reaching a verdict, if you can . . . do so without violence to individual judgment.
>
> Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not advocates, you are [j]udges of the facts. Your sole interest is to ascertain the truth from the evidence in this case.

¶ 29　　The trial court's modified-*Allen* instruction tracked the pattern instruction, COLJI-Crim. E:18 (2024).

¶ 30    After two more hours of deliberation — around 7 p.m. that evening — the trial court notified Fletcher and the prosecution that it wanted to check on the jury's status:

> So what I thought I would do, I don't really want to have the bailiff doing communications and so I thought I would just bring, you know, like ask how they are or something. So I thought that I'd just ask [the bailiff] to bring them back into court and I'm going to ask them how they're doing and see what they say. Okay?

¶ 31    The prosecution said it was "okay" with that course of action. Fletcher's counsel didn't make a comment, nor did he object.

¶ 32    The trial court brought the jury into the courtroom and had the following colloquy with the jury foreperson:

> THE COURT: . . . So ladies and gentlemen, I wanted to ask how you're doing and how you'd like to proceed basically at this point.
>
> THE FOREPERSON: We are in agreement on Counts 7 and 8. We do not have 100 percent on 1, 2, 3, 5, and 6 yet. Not sure how — if that will change, so not sure how we proceed with that.
>
> THE COURT: Would you like to continue deliberating? Okay. I'm a little concerned.
>
> THE FOREPERSON: Okay.
>
> THE COURT: I don't want people to have to state that in open court.

THE FOREPERSON: Okay. Sorry.

THE COURT: So what I'm going to ask you to do is go back to the jury room and then let the bailiff know how you want to proceed. Okay?

THE FOREPERSON: Okay.

THE COURT: Thank you.

THE FOREPERSON: What would — sorry. What would our other options be then if we cannot come to a decision on the other ones?

THE COURT: I would just like you to go back to the jury room and then tell the bailiff how you'd like to proceed.

THE FOREPERSON: Okay.

THE COURT: Okay?

¶ 33    Once the jury had been excused, Fletcher's counsel didn't object to the trial court's communications but did request a mistrial on the following grounds:

> I am requesting that a mistrial as to the counts they can't agree on be issued now. I think that with the last written jury question, along with the behavior that we saw in the courtroom, there's a substantial high risk for a coerced verdict where an individual juror, I had a general idea what direction they were . . . pointing to. And I am very concerned that this is leading to a coercive verdict territory, which would violate Mr. Fletcher's right to a fair trial and due process under the Colorado and Federal Constitution[s].

16

¶ 34    The trial court stated that if the jurors indicated that they couldn't reach a verdict that evening, it would declare a mistrial.

¶ 35    About fifteen minutes later, the bailiff notified the trial court that the jury wished to continue deliberations on the following Monday, following the holiday weekend.  The trial court dismissed the jury for the holiday weekend without declaring a mistrial.

¶ 36    The following Monday, the jury returned and deliberated for thirty more minutes before informing the court that it had reached a unanimous verdict.  The jury found Fletcher guilty on all charges.

2.    Standard of Review and Preservation

¶ 37    It is within a trial court's discretion to give a jury a modified-*Allen* instruction or other supplemental instruction.  *Allen*, 660 P.2d at 898.  Accordingly, we review that decision for an abuse of discretion.  *Gibbons v. People*, 2014 CO 67, ¶ 12.  If a defendant fails to preserve their appellate argument about a supplemental instruction, we review that argument for plain error.  *People v. Dinapoli*, 2015 COA 9, ¶ 9.  "We reverse under plain error review only if the error 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the

17

judgment of conviction.'" *Hagos v. People*, 2012 CO 63, ¶ 14 (citation omitted).

¶ 38 Although Fletcher objected to the court giving a modified-*Allen* instruction generally, he didn't object to the court giving a modified-*Allen* instruction without first inquiring into the jury's likelihood of progress toward a unanimous verdict upon further deliberations — the specific argument he advances on appeal. *See Dinapoli*, ¶ 10 (appellate argument that modified-*Allen* instruction was improper without a mistrial advisement wasn't preserved when the defendant had objected to the modified-*Allen* instruction but didn't specifically object to the modified-*Allen* instruction without a mistrial advisement). Accordingly, we review this contention for plain error.

¶ 39 Fletcher also didn't object to the trial court's additional communications with the jury following the modified-*Allen* instruction that he now contends on appeal were coercive. Therefore, we review this contention for plain error as well.

### 3. Applicable Law

¶ 40 A trial court must avoid coercing a jury to reach a verdict. *People v. Schwartz*, 678 P.2d 1000, 1012 (Colo. 1984). "A court cannot sanction a verdict 'which is reached by some members of the

jury sacrificing their conscientious opinions merely for the sake of reaching an agreement.'" *Id.* (quoting *Lowe v. People*, 488 P.2d 559, 561 (Colo. 1971)). "[T]he coercive effect of a supplemental jury instruction . . . will necessarily depend on the content of the instruction and the context in which it is given." *Gibbons*, ¶ 30.

¶ 41   If a jury signals that it is at an impasse, the trial court can mitigate some coercive risk by giving the jury a modified-*Allen* instruction. *People v. Black*, 2020 COA 136, ¶ 18. "Before giving a modified-*Allen* instruction, the trial court should 'determine whether there is a likelihood of progress towards a unanimous verdict upon further deliberations.'" *Fain*, ¶ 19 (quoting *Schwartz*, 678 P.2d at 1012). This step is crucial to minimize the possibility that the modified-*Allen* instruction coerces a hopelessly deadlocked jury into reaching a compromised verdict. *Id.*

¶ 42   If progress is likely and there is no impasse, the trial court can give the jury an unqualified instruction to keep deliberating. *Black*, ¶ 20. If, however, the trial court finds progress is unlikely and that the jury is at an impasse, the risk of coercion increases; still, the risk of coercion can be mitigated by giving the jury an instruction that includes the prophylactic language contained in a modified-

*Allen* instruction. *Id.* at ¶ 21. "But a modified-*Allen* instruction's prophylactics are not strong enough to sufficiently mitigate the most powerfully coercive circumstances," *id.* at ¶ 22, and "there is 'the potential that a modified-*Allen* instruction will coerce a hopelessly deadlocked jury into reaching a compromise verdict.'" *Id.* (quoting *Fain*, ¶ 19).

¶ 43 While making an explicit inquiry into the likelihood of progress toward a unanimous verdict upon further deliberations is best practice before giving a modified-*Allen* instruction, a trial court can sometimes determine the jury's status without asking. *See, e.g.*, *Fain*, ¶ 20 (a jury note stating that one juror's viewpoint "will not change" notified the trial court that the jury was hopelessly deadlocked). Indeed, requiring the trial court to make the pre-instruction inquiry even if the court understands the jury's status "would elevate form over substance." *Id.*

#### 4. Application

¶ 44 We first address whether the trial court reversibly erred by failing to explicitly inquire into the status of the jury's deliberations before giving a modified-*Allen* instruction; then, we address whether the trial court's further communications after the modified-*Allen*

instruction were indicative of coercion. As discussed below, we reject both contentions.

a. Inquiry into the Likelihood of Progress Toward a Unanimous Verdict upon Further Deliberations

¶ 45    First, we perceive no error, much less plain error, with the trial court giving the jury a modified-*Allen* instruction without first inquiring into the likelihood of progress toward a unanimous verdict upon further deliberations. The jury's note itself provided the trial court with a great deal of information regarding the status of the jury's deliberations. It told the trial court which counts the jury had reached a unanimous verdict on, which counts it hadn't, that there was one holdout juror, and why that juror was holding out — because they weren't "'100%' sure" Fletcher was the driver.

¶ 46    To be sure, the note communicated that there was some sort of impasse in the jury's deliberations. The note specified that the jury was "hung" on whether Fletcher was the driver, and that this was an obstacle to a unanimous verdict on several charges. With some level of impasse, the trial court couldn't have given the jury an unqualified instruction to continue deliberating. *See Black,* ¶ 20.

21

¶ 47 On the other end of the spectrum, the note didn't communicate that the jury was hopelessly deadlocked either. The note mentioned that the holdout juror was "not '100%' sure" if Fletcher was the driver. The beyond a reasonable doubt standard, however, doesn't require a juror to be 100% sure. *See* COLJI-Crim. E:03 (2024) (proof beyond a reasonable doubt requires "more than proof that something is highly probable, but it does not require proof with absolute certainty").

¶ 48 With the beyond a reasonable doubt standard in mind, the jury note communicated that the holdout juror wasn't absolutely certain regarding an element of several offenses. But it didn't communicate that the jury was hopelessly deadlocked like the note in *Fain*, which stated that the holdout juror wouldn't change his view. *Fain*, ¶ 20. Additionally, the note came after seven hours of deliberations, after a four-day trial. Therefore, this wasn't a situation of a "hopelessly deadlocked jury that [had] been deliberating for days." *Black*, ¶ 17.

¶ 49 Thus, the note itself indicated that the jury was somewhere between "no impasse" and "hopelessly deadlocked." Accordingly, the trial court had enough information to conclude that the jury

22

was at an impasse. Requiring the trial court to make an inquiry into the jury's likelihood of progress toward a unanimous verdict upon further deliberations would have "elevate[d] form over substance." *Fain*, ¶ 20. Thus, based on the information the jury provided in its note, the trial court didn't abuse its discretion by giving the jury a modified-*Allen* instruction without first making an explicit inquiry regarding the utility of further deliberations. *See Black*, ¶ 18.

### b. Modified-*Allen* Instruction and Following Jury Communications

¶ 50 We also perceive no error in the trial court's giving of the modified-*Allen* instruction or in the comments the court made to the jury thereafter. The context of these communications cuts against any inference of coercion. First, the trial court didn't give the jury any sort of deadline on its deliberations. *See People v. Cox*, 2023 COA 1, ¶¶ 21-22 (placing a deadline on deliberations, or otherwise explicitly or implicitly urging the jurors to compromise their views for the sake of a unanimous verdict, may be coercive). Instead, the trial court *asked* the jury how it wanted to proceed, without imposing any time pressure. Nor did the trial court

explicitly or implicitly urge the jurors to compromise their views for the sake of a unanimous verdict. To the contrary, the modified-*Allen* instruction given shortly before the court's comments to the jury explicitly told the jurors *not* to compromise their views for the sake of a unanimous verdict. *See Dinapoli,* ¶ 13 (giving an instruction that tracks the pattern modified-*Allen* instruction cuts against a finding of coercion). Simply put, none of the trial court's actions, whether by giving the modified-*Allen* instruction or in the comments made after, give rise to an inference of coercion.

¶ 51 Fletcher argues that the jury returning on the following Monday and reaching a unanimous verdict after only thirty minutes of additional deliberation is indicative of a coerced verdict. *See Cox,* ¶ 35 (noting that the length of deliberations after the jury is given a modified-*Allen* instruction can provide insight into how coercive the instruction was). To be sure, just thirty minutes of additional deliberation after the jurors indicated that they were still at an impasse before being dismissed Thursday night is a short time to reach a unanimous verdict. But this timing, standing alone, isn't indicative of a coerced verdict. This is particularly so where there is nothing in what the court did or said that is indicative of coercing

the jury to reach a unanimous verdict. Accordingly, based on the totality of the circumstances, we reject Fletcher's contention that the verdict must be set aside because it was coerced.

## C. Bifurcation

¶ 52 Finally, Fletcher contends that the trial court erred when it denied his motion to bifurcate his trial to adjudicate the prior convictions element of felony DUI separately. We disagree.

¶ 53 Our supreme court definitively held in *People v. Kembel*, 2023 CO 5, ¶ 4, that a trial court doesn't have discretion to bifurcate the prior conviction element in a felony DUI trial.

¶ 54 Notwithstanding *Kembel*, Fletcher argues that the refusal to bifurcate the trial is inconsistent with a more recent United States Supreme Court decision in which the Court held that the "fairest" practice is to bifurcate a trial when ruling on a sentence enhancer involving prior convictions. *Erlinger v. United States*, 602 U.S. 821, 847 (2024) (citation omitted). Here, however, the prior convictions are an element of the offense, not a sentence enhancer. *See Linnebur v. People*, 2020 CO 79M, ¶ 2 (holding that for felony DUI, the prior convictions are an element of the crime, not a sentence enhancer), *abrogated on other grounds by, People v. Crabtree*, 2024

25

CO 40M, ¶¶ 32-40.  Thus, *Erlinger* is inapplicable.  Moreover, we can't depart from the Colorado Supreme Court's ruling in *Kembel*. *See People v. Porter*, 2015 CO 34, ¶ 23 (the court of appeals is bound by decisions of the supreme court).  Therefore, the trial court properly denied Fletcher's request to bifurcate.

### III.   Disposition

¶ 55    For the reasons set forth above, we affirm the judgment of conviction.

JUDGE GOMEZ and JUDGE SULLIVAN concur.